**Christina M. AMRHEIN, Appellant,**

v.

**Michael Joseph AMRHEIN, Appellee.**

Superior Court of Pennsylvania.

Argued March 28, 2006.
Filed June 26, 2006.

Christina M. Amrhein, appellant, Pro Se.

Iphigenia Torlidas, Pittsburgh, for appellee.

BEFORE: FORD ELLIOTT, P.J., BOWES and JOHNSON, JJ.

OPINION BY BOWES, J.:

¶ 1 In this acrimonious custody case, Christina M. Amrhein ("Mother") appeals from the trial court's June 22, 2005 denial of her petition to proceed *in forma pauperis* ("IFP"), the May 16, 2005 award of primary physical custody of the parties' children to Michael Amrhein ("Father"), and the May 16, 2005 partial grant of Father's motion for sanctions based upon Mother's contempt of a September 15, 2004 custody order. We directed consolidation of Mother's three appeals by order dated August 11, 2005. After careful review, we reverse the denial of IFP status and remand.

¶ 2 The following procedural history is relevant. The parties separated in the fall of 2003, and Father filed protection from abuse ("PFA") petitions against Mother that resulted in the entry of temporary orders against her on September 2 and October 14, 2003. Mother filed a divorce complaint on October 10, 2003. On October 23, 2003, Mother and Father executed a consent decree directing that Father would retain possession of the marital residence and have primary physical custody of the parties' two daughters, Brittany, born September 17, 1989, presently sixteen years old, and Dayna, born September 17, 1996, currently age nine. Mother had partial physical custody on weekends. Mother sought primary physical custody less than a month later, on November 13, 2003.

¶ 3 In December 2003, during an incident between Father and Brittany, responding police officers arrested Father for simple assault. Mother sought a PFA against Father the next day, a temporary PFA was granted, and Mother was awarded temporary physical custody of the girls. On January 9, 2004, the temporary PFA was vacated.

¶ 4 On May 19, 2004, the trial court ordered the separation of the siblings, who had always resided together, and directed Dayna to return to the primary physical custody of Father. Mother filed a motion for special relief in which she averred that it was not in the children's best interest to be separated, nor was it proper for the court to transfer custody without a hearing. In response, the trial court, on June 1, 2004, ordered the parties to submit to a psychological evaluation.

¶ 5 Father again sought a PFA against Mother on June 18, 2004, and the court entered a temporary order. On September 15, 2004, the trial court entered an interim order vacating the temporary PFA against Mother and awarding shared legal and physical custody to the parties on an alternating weekly basis. The court further ordered the parties to undergo co-parenting counseling. The parties sought redress in court on minor matters throughout this period because they were unable to agree on even the minutest of details concerning custody arrangements.

¶ 6 A custody hearing was held May 3–5, 2005. On May 16, 2005, the trial court awarded Father primary physical custody and Mother partial physical custody, found Mother in contempt, granted Father "make-up" custody time, and awarded Fa-

ther the $750 in counsel fees that he expended to litigate the motion for sanctions.

¶ 7 Mother filed appeals from the two May 16, 2005 orders and simultaneously, on June 9, 2005, sought IFP status in the trial court, which was denied. Mother appealed that denial and requested reconsideration by the trial court. On July 14, 2005, noting that Mother was in the process of seeking reconsideration of the trial court's order rejecting her IFP status, this Court denied her request to proceed IFP on appeal without prejudice to renew the request if the trial court denied her reconsideration motion. On July 20, 2005, the trial court informed the Deputy Prothonotary of this Court that it was unable to prepare an opinion because Mother had failed to order the relevant transcripts. A week later, on July 27, 2005, the trial court denied Mother's request for reconsideration of its order denying IFP status.

¶ 8 On August 15, 2005, we directed Mother to show cause why her appeals should not be dismissed for failure to order and pay for the transcript. On August 29, 2005, Mother's counsel responded that Mother did not have the funds to pay for the transcript.[1] Counsel represented that Mother has less than $500 per month in discretionary funds for food, clothing, and payments toward substantial debt, including the $1,000 the trial court ordered as a result of granting Father's motion for sanctions. Counsel also related that Father was $4,700 in arrears in child support payments, which, if paid, would be used to purchase the transcript.

¶ 9 On October 5, 2005, Father filed a motion to quash the appeal pursuant to Pa.R.A.P. 1911(d), which instructs that if

the appellant fails to request a transcript, the appellate court may take such action as it deems appropriate, including dismissal of the appeal. On November 1, 2005, this Court denied the motion to quash without prejudice to renew the issue before the merits panel.

¶ 10 Mother, who proceeds on appeal *pro se*, raises three issues, two of which relate to the propriety of the custody order. The third and only issue we address herein concerns the propriety of the trial court's denial of IFP status. "In reviewing a trial court's resolution of an application to proceed *in forma pauperis*, we reverse only if the court abused its discretion or committed an error of law." *Crosby Square Apartments v. Henson*, 446 Pa.Super. 286, 666 A.2d 737, 738 (1995) (citing *In re Adoption of B.G.S.*, 418 Pa.Super. 588, 614 A.2d 1161 (1992)). The issue is properly before us as our Supreme Court has held that "an order denying *in forma pauperis* status is a final, appealable order." *Grant v. Blaine*, 582 Pa. 1, 4, 868 A.2d 400, 402 (2005) (emphasis omitted).

¶ 11 As noted *supra*, Mother sought IFP status in the trial court on June 9, 2005. Pa.R.C.P. 240(b) states, "A party who is without financial resources to pay the costs of litigation is entitled to proceed *in forma pauperis*." The mere filing of a praecipe for IFP status will not automatically establish the petitioner's right to proceed in that status. *Nicholson v. Nicholson*, 247 Pa.Super. 172, 371 A.2d 1383 (1977). The court must satisfy itself of the truth of the averment of inability to pay. *B.G.S., supra*. If it believes the

---

1. There was some question about Mother's representation status on appeal. Mother informed this Court that she was proceeding *pro se*, but the record reflected that Attorney Daniel P. Buzard, who represented Mother in the trial court, remained the attorney of record. Attorney Buzard's request for permission to withdraw was granted by this Court on October 14, 2005.

petitioner's averments, there is no requirement that the court conduct an evidentiary hearing. The trial court has considerable discretion in determining whether a person is indigent for purposes of an application to proceed *in forma pauperis*. However, in making that determination, it must focus on whether the person can afford to pay and cannot reject allegations contained in an application without conducting a hearing. *Crosby Square Apartments v. Henson, supra.*

¶ 12 Rule 240(h) contains a form for parties seeking IFP status, which Mother completed. She provided information regarding her income, assets, and liabilities. The trial court reviewed the form, stated that it accepted her income averments as true, yet denied Mother IFP eligibility. While the trial court made reference to the Rule 240 affidavit form, instead of relying upon it, the trial court evaluated Mother's qualification for IFP status by reference to the Neighborhood Legal Services Association ("NLSA") Financial Guidelines,[2] which are based on gross income. The trial court represented that the NLSA Guidelines were utilized by judges in the Family Division of Allegheny County to determine a litigant's eligibility for IFP status. Under the NLSA Guidelines, Mother's gross monthly income of $2,311 was above the NLSA eligibility cut-off figure of $1,336 for a two-person family.[3] The trial court stated the following:

> To determine Mother's eligibility for IFP status, this Court consulted "Attachment 2" of the 2005 Neighborhood Legal Services Association Financial Guidelines. These guidelines are used by Judges in this Division to determine a litigant's eligibility for IFP status. The Attachment notes that the income guidelines are based on gross income and that the children are not to be counted in the household composition of the person seeking a waiver of fees. Therefore, in Mother's case, there is a two-person family unit consisting of Mother and her boyfriend. According to the guidelines, the monthly income cut-off for a household of two persons is $1,336.00. Mother's gross monthly income of $2,311.76 is far above this cut-off .... Accordingly, this Court was constrained to deny Mother's request for IFP status.

Trial Court Opinion, 8/31/05, at 2 (footnote omitted).

¶ 13 As seen from the above, the NLSA guidelines consider **only the gross income** of the petitioner and exclude consideration of the children in the household's composition. This procedure is in direct conflict with the dictates of Rule 240(c), which provides that, except in cases

---

2.  We have found two references to the NLSA guidelines. One is in Allegheny County Court of Common Pleas Administrative Order 253 of 1998. That order grants petitioners who meet such guidelines and who are participating in the Allegheny County Bar Foundation's Indigent Divorce Program or NLSA's divorce referral program the right to proceed therein *in forma pauperis*. The other is section VI(I)(1) of the Court Manual for the Adult Section of the Family Division of the Court of Common Pleas of Allegheny County ("Court Manual"). Section VI(I)(1), **Waiver of Court Costs in Pro Bono and Reduced Fee Divorce or Custody Actions**, notes that any person who qualifies pursuant to the NLSA income and asset eligibility guidelines, and who is being referred to an attorney for *pro bono* or reduced fee representation in a divorce or custody matter, may be issued a Certificate of Financial Eligibility by NLSA, the Allegheny County Divorce Law Project, the Pittsburgh *Pro Bono* Partnership, and the YWCA Legal Resources for Women. Nothing in the record suggests that Mother obtained such referral.

3.  The trial court excluded Brittany and Dayna from consideration within Mother's household, again pursuant to the NLSA Guidelines, but included Mother's boyfriend.

where the party's attorney is providing free representation, the affidavit in support of the petition to proceed IFP "shall ... [be] in the form prescribed by subdivision (h)." Subdivision (h) provides, in pertinent part:

1. I am the (plaintiff) (defendant) in the above matter and because of my financial condition am unable to pay the fees and costs of prosecuting or defending the action or proceeding.

2. I am unable to obtain funds from anyone, including my family and associates, to pay the costs of litigation.

3. I represent that the information below relating to my ability to pay the fees and costs is true and correct:

(a) Name
    Address
    Social Security Number

(b) Employment
    If you are presently employed, state
    Employer
    Address
    Salary or wages per month
    Type of work
    If you are presently unemployed, state
    Date of last employment
    Salary or wages per month
    Type of work

(c) Other income within the past twelve months
    Business or profession
    Other self-employment
    Interest
    Dividends
    Pension and annuities
    Social security benefits
    Support payments
    Disability payments
    Unemployment compensation and supplemental benefits
    Workman's compensation
    Public assistance
    Other

(d) Other contributions to household support
    (Wife)(Husband) Name
    If your (wife)(husband) is employed, state
    Employer
    Salary or wages per month
    Type of work
    Contributions from children
    Contributions from parents
    Other contributions

(e) Property owned
    Cash
    Checking account
    Savings account
    Certificates of deposit
    Real estate (including home)
    Motor vehicle: Make ___ Year ___,
    Cost ___, Amount Owed $___
    Stocks; bonds:
    Other:

(f) Debts and obligations
    Mortgage
    Rent
    Loans
    Other

(g) Persons dependent upon you for support
    (Wife)(Husband) Name
    Children, if any
    Name
    Age
    Other persons
    Name
    Relationship

¶ 14 The explicit purpose of the affidavit is to provide all relevant information necessary to the court's determination of IFP

status. It requires the petitioner to reveal not only gross income but also debts and obligations, including, but not limited to, mortgages, rent or loans. It also requires the petitioner to identify all persons, such as the petitioner's children, who are dependent upon him or her for support. As such, the rule clearly directs that the court take into consideration both monthly income and the delineated monthly obligations in making a determination of IFP status.

¶ 15 Moreover, Pa.R.C.P. 128(b) provides that in ascertaining the intention of our Supreme Court in the promulgation of a rule of court, the courts of this Commonwealth are guided, *inter alia,* by the presumption "[t]hat the Supreme Court intends the entire rule ... to be effective and certain." *Cutlip v. Shugars,* 815 A.2d 1060 (Pa.Super.2003). Thus, we strive to give effect to all provisions of a rule when possible. *In re D.W.,* 856 A.2d 1231 (Pa.Super.2004).

¶ 16 It is noteworthy that the relevant Allegheny County Civil and Family Division Rules make no reference to the NLSA guidelines. Pennsylvania Allegheny Cty. Civ. LR 198.7 provides that a party seeking IFP status should file an application that conforms to the requirements of Rule 198.8. Rule 198.8 lists the form of a verified statement in support of an application for leave to proceed *in forma pauperis* and requires the petitioner to list income, debts, obligations, and the identification of all persons dependent upon the petitioner for support. Form VI–6 in the Court Manual, which sets forth the verified financial statement that is to accompany a petition for leave to proceed *in forma pauperis,* is substantially similar to Pa.R.C.P. 240(h). At paragraph (f), the form mandates the listing of all debts, including mortgage or rent, loans, and other debt, and paragraph (g) calls for the identifica-

tion of all persons, including children, who are dependent upon the petitioner for support. Clearly, if a determination of IFP eligibility was rendered solely on gross income, as was done herein, the detailed information delineated in Pa.R.C.P. 240 would be unnecessary. Thus, such a procedure conflicts with the requirements of the state rule. *See Goldstein v. Haband Company, Inc.,* 814 A.2d 1214, 1215 (Pa.Super.2002) (finding Lackawanna County Rule invalid because it conflicted with statewide IFP practice).

¶ 17 Furthermore, the Court Manual, Section VI, **Miscellaneous**, subsection J, provides, in relevant part:

**J. Waiver of Court Costs and Fees in Other Cases**

Pennsylvania Rule of Civil Procedure 240 sets forth the procedure and the form for requesting leave to proceed without paying costs or fees in any Family Division case not addressed in Section IV. H. Please note that the Court decides whether to allow a party to [proceed] *in forma pauperis* **on a case by case basis.**

¶ 18 We conclude that the rote use of the NLSA guidelines was improper because it failed to consider Mother's obligations and monthly expenditures in direct conflict with the requirements of Pa.R.C.P. 240 and Allegheny Cty Civ. R. 198.8; the trial court thus committed an error of law. It further conflicts with the common pleas court's representation of the use of a case-by-case analysis in determining whether to grant IFP status.

¶ 19 Rendering a determination of IFP eligibility solely on gross income as dictated by the NLSA Guidelines does not entail a thoughtful process that the case-by-case language invokes. Indeed, focus on only gross income ignores the unassailable expenses of life. Mother pays rent, utilities, the costs of health insurance for her, Fa-

ther, and the children and has major debt obligations. She and her girls obviously need to eat and be clothed. It also is significant that Father was nearly $5,000 in arrears in his child support obligation, as noted in paragraph 3C of Mother's IFP application. As we stated in *Crosby Square Apartments v. Henson, supra* at 739:

the trial court ignored the realities of life when it concluded [the petitioner] had 'surplus income' of $870 a month according to her application .... [S]he also had four minor dependents. The [Rule 240] form itself gives two lines for listing one's expenses other than loans, mortgages, and rent. Appellant was more than reasonable in assuming that a court, in deciding such an application, would be aware of the ordinary expenses attendant on everyday life. Appellant works, and she needs money for clothing, lunch, and transportation. She has food and clothing costs for her dependents.

¶ 20 The *Crosby Square* Court further noted that when considering whether an individual is indigent, the trial court must focus on whether he or she can afford to pay "and cannot reject the allegations contained in an application without conducting a hearing. If some allegations in the application are accepted but others are rejected, a hearing nonetheless is required. *Griffin v. Tedesco,* [336 Pa.Super. 586, 486 A.2d 419 (1984) ]." *Crosby Square Apartments, supra* at 739.

¶ 21 In paragraph one of her application, Mother averred specifically that she did not have the resources to pay costs. Despite the fact that the trial court stated that "[a] hearing was not necessary to dispose of Mother's IFP Petition because [it] accepted Mother's representation in her Petition as to her income," trial court opinion, 8/31/05, at 2–3, the court failed to conduct the balance of its evaluation. Mother was required to provide information regarding income, debts, and obligations, and did so, but no evaluation of this information was performed by the trial court. Moreover, Mother's averment that she did not have the resources to pay costs obviously was disbelieved by the trial court; therefore, it was required to hold a hearing.

¶ 22 *Crosby Square Apartments* involved that precise scenario. The trial court therein stated that it "did not disbelieve the averments in the application" for IFP status in determining that the appellant's surplus income of $870 per month compelled the denial of IFP status. *Id.* at 738. The court further noted that since it credited the petitioner's income and expense figures, there was no need to conduct a hearing. We reversed and remanded for a hearing and stated that the trial court's suggestion that it "did not disbelieve the averments" was "not technically correct," as the petitioner, like Mother herein, "averred specifically that she did not have the resources to pay costs." *Id.* at 738. Despite its representation to the contrary, the trial court clearly discredited that averment. We observed in *Crosby Square Apartments* that since the application, on its face, contained an averment of inability to pay costs, there were sufficient factual allegations, "viewed in light of realities, to establish a *prima facie* case of poverty." *Id.* at 739. Thus, we held that the appellant should be afforded a hearing to substantiate that her food, clothing, and other costs would reduce her surplus income enough to allow her to proceed *in forma pauperis.*

¶ 23 In *B.G.S., supra,* we noted that "[t]his Court will refer to the trial court questions regarding the veracity of a petitioner's allegations." *Id.* at 1170–71. Therein, the trial court was familiar with

the petitioner's financial condition, determined that her averments were truthful, and granted her IFP status without holding a hearing. We affirmed the trial court's order granting IFP status without holding a hearing. In *Goldstein v. Haband Company, Inc., supra*, we reiterated that a trial court's disbelief of averments in an IFP application **requires** the court to hold an evidentiary hearing to determine the veracity of the claim of the inability to pay costs.

¶ 24 In the instant case, the trial court stated that it accepted the income averments, but it failed to assess the balance of the averments, instead determining eligibility based upon Mother's income as defined in the NLSA Guidelines. Thus, we do not have the benefit of the trial court's assessment of Mother's entire financial picture, which is required under Pa.R.C.P. 240 and Allegheny Cty Civ. R. 198.8.

¶ 25 We therefore direct the trial court, within ten days of this decision, to consider all of the averments in Mother's IFP application including Mother's substantial debt, Father's significant support arrearages, and the realities of life expenditures. If the court credits Appellant's averments and grants IFP status, then we order that the custody hearings be transcribed within forty-five days of the trial court's determination, and direct the trial court to prepare its opinion regarding the issues relating to the appeals of the May 16, 2005 orders within thirty days following receipt of the transcripts. If the trial court rejects Mother's averments set forth in her IFP application within ten days of this Court's decision, it must hold a hearing within thirty days of the filing of the instant Opinion and render a determination concerning IFP status within ten days of the hearing. If the court thereafter grants IFP status, the above timeline concerning preparation of the transcripts and trial court opinion shall apply. If IFP status is again denied, we will consider the propriety of that denial on appeal.

¶ 26 Reversed and remanded for proceedings consistent with this Opinion. Panel jurisdiction retained.