J-A21017-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ANN S. BORIS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VAMSIDHAR VURIMINDI | : | |
| | : | |
| Appellant | : | No. 1215 EDA 2020 |

Appeal from the Order Entered May 19, 2020
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s): No. D10088575

| | | |
|---|---|---|
| ANN S. BORIS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VAMSIDHAR VURIMINDI | : | |
| | : | |
| Appellant | : | No. 1553 EDA 2020 |

Appeal from the Order Entered July 1, 2020
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s): No. D10088575

BEFORE:   KUNSELMAN, J., NICHOLS, J., and KING, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED JANUARY 25, 2022**

Vamsidhar Vurimindi (Husband) appeals *pro se* from the May 19, 2020

equitable distribution order entered after the trial court's previous entry of a

bifurcated divorce decree[1] ending his marriage to Ann S. Boris (Wife).

_____

[1] **See** 23 Pa.C.S. § 3323(c.1) (discussing the entry of a divorce decree prior
to the final determination and disposition of economic issues between the
*(Footnote Continued Next Page)*

Husband also appeals from the July 1, 2020 order denying his petition to proceed *in forma pauperis* (IFP) in his appeal from the equitable distribution order.[2] Husband challenges the denial of his IFP petition, several subsidiary orders entered during the divorce and equitable distribution proceedings,[3] and the final equitable distribution order. We affirm.

Husband and Wife married in 2005 and separated in 2010. Wife initially filed a divorce complaint in August 2010 but did not serve Husband until 2012. Husband represented himself in the divorce and equitable distribution

---

parties). This Court previously affirmed the bifurcated divorce decree in **Boris v. Vurimindi**, 192 A.3d 280, 77 EDA 2017, 2018 WL 2423608 (Pa. Super. filed May 30, 2018) (unpublished mem.) (**Vurimindi 1**), and our Supreme Court denied Husband's petition for allowance of appeal on February 6, 2019. **Boris v. Vurimindi**, 201 A.3d 732 (Pa. 2019) (**Vurimindi 2**).

[2] This Court consolidated Husband's appeals on September 29, 2020.

[3] We note that Husband appeals several subsidiary orders entered before the bifurcated divorce decree. However, we note that the **Vurimindi 1** panel quashed Husband's equitable distribution claims without prejudice. **See Vurimindi 1**, 2018 WL 2423608, at *1 n.1. Because the present appeal concerns the final equitable distribution order, we will consider Husband's challenges to the previously interlocutory orders to the extent they concern the economic issues between Husband and Wife. **Cf. Stephens v. Messick**, 799 A.2d 793, 798 (Pa. Super. 2002) (stating that "[a]s a general rule, interlocutory orders that are not subject to immediate appeal as of right may be reviewed on a subsequent timely appeal of the final appealable order or judgment in the case").

Although Husband's notice of appeal from the equitable distribution order did not include all of the interlocutory orders Husband intended to appeal, we decline to quash or find waiver based on this technical error. **See** Pa.R.A.P. 902 (noting that the "[f]ailure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but it is subject to such action as the appellate court deems appropriate").

- 2 -

proceedings and filed numerous motions including requests to live at one of the parties' properties, compel discovery, recuse the trial judge, sanction Wife, and allow counterclaims against third parties.

Following a master's hearing, the trial court granted a trial *de novo*, which included hearings on July 26, 2016, December 12, 2016, and December 16, 2016. The trial court entered a divorce decree on December 16, 2016, but reserved ruling on the parties' economic issues.

The parties' economic issues focused on the distribution of the parties' real properties in Philadelphia and business interests. The real properties included the former marital residence on Arch Street, and parcels on North 11th Street, East Palmer Street, and Frankford Avenue. Husband purchased the Frankford Avenue parcel before the marriage, and he initially used personal funds to construct apartments on the parcel (Frankford Avenue apartments). Wife's business interests concerned three entities, Numoda Corporation, Numoda Technologies, and Numoda Capital Innovations (Numoda Capital) (collectively, Numoda entities), which Wife owned along with her siblings, John Boris and Mary Schaheen, as well as other individuals and entities.[4]

---

[4] Another individual with an interest in Numoda Corporation, and referred to in this appeal, is Patrick J. Keenan, Esq. (Attorney Keenan). **See In re Numoda Corp. Shareholders Litig.**, CV 9163-VCN, 2015 WL 402265, at *1 (Del. Ch. Jan. 30, 2015) (unpublished op.), *judgment entered sub nom.* **In re Numoda Corp.** (Del. Ch. 2015), *and aff'd sub nom.* **In re Numoda Corp.**, 128 A.3d 991, 2015 WL 6437252 (Del. 2015) (unpublished op.). The
*(Footnote Continued Next Page)*

We add that Husband and Wife were each involved in separate litigation throughout the parties' marriage, divorce, and the litigation of the equitable distribution issues. For example, Husband, either individually or through an entity known as Victor Land LLC, commenced or defended numerous civil actions. Further, as to the marital residence on Arch Street, the condominium association for the residence brought a foreclosure action following the parties' separation.

The Commonwealth also charged Husband in a criminal matter at CP-51-CR-0008022-2012, during the divorce proceedings. *Vurimindi 1*, 2018 WL 2423608, at \*1, \*4 n.7.; *see also Commonwealth v. Vurimindi*, 200 A.3d 1031, 1034 (Pa. Super. 2018) (*per curiam*) (*Com. v. Vurimindi*). The charges resulted in Husband's detention for a bail violation in October 2013,[5]

_____

Delaware courts noted that Attorney Keenan "performed legal work for [Numoda Corporation and Numoda Technologies]" and held positions with Numoda Capital. *Id.* As discussed below, there was litigation in Delaware concerning the ownership and corporate structures of the Numoda entities, and the trial court here accepted the decisions of the Delaware courts as evidence.

[5] The criminal court found Husband incompetent for trial in separate orders in October and December 2012. *Vurimindi 1*, 2018 WL 2423608, at \*4 n.7. Although it is unclear when the criminal court found Husband competent, Husband was incarcerated in October 2013 for a violation of his bail in the criminal matter and remained in custody throughout the remaining litigation of the bifurcated divorce decree. *Id.* at \*1, \*4 n.7; *see also Com. v. Vurimindi*, 200 A.3d at 1034 (noting that mental health competency evaluations were conducted in the criminal case between February 2012 and July 2013). Although the Commonwealth charged Husband with stalking and disorderly conduct, Husband's criminal matter did not involve any of the other individuals mentioned in the present appeals.

- 4 -

and the imposition of a sentence of two and a half to five years' imprisonment followed by five years' probation in April 2014.

Further, Wife and her brother, John Boris, unsuccessfully litigated ownership disputes over Numoda Corporation and Numoda Technologies in Delaware. *See In re Numoda Corp. Shareholders Litig.*, 2015 WL 402265, at *1; *see also Boris v. Schaheen*, CV 8160-VCN, 2013 WL 6331287, (Del. Ch. filed Dec. 2, 2013) (unpublished op.). The Delaware litigation resulted in findings that Wife owned 7,745,500 shares of Numoda Corporation, that Numoda Technologies was a subsidiary of Numoda Corporation, and that Numoda Corporation held the shares of Numoda Technologies.[6] *See In re Numoda Corp. Shareholders Litig.*, 2015 WL 402265, at *14, *15 n.149.

In December 2018, the trial court issued an equitable distribution order and in January and February 2019, the trial court issued amended orders. This Court vacated the trial court's 2018 and 2019 orders concluding that the trial court lacked jurisdiction because our Supreme Court had not denied Husband's petition for allowance of appeal and this Court had not remitted the record to the trial court. *See Boris v. Vurimindi*, 859 EDA 2019, 2020 WL

---

[6] We note that the Delaware litigation included a claim that the assets of Numoda Corporation and Numoda Technologies were wrongfully transferred to Numoda Capital. *See In re Numoda Corp. Shareholders Litig.*, 2015 WL 402265, at *5 n.60. However, the Delaware court dismissed the claims against Numoda Capital finding that the parties presented no evidence that Numoda Capital wrongfully took assets from Numoda Corporation or Numoda Technologies. *See id.*

1692804, at *2 (Pa. Super. filed Apr. 7, 2020) (unpublished mem.) (**Vurimindi 3**).

On May 19, 2020, the trial court entered the instant equitable distribution order which, in part, directed the transfers of (1) the Frankford Avenue apartments from Husband to Wife and (2) 100% of Wife's interest in Numoda Corporation and Numoda Technologies to Husband. Wife retained 100% of her interest in Numoda Capital. Husband timely appealed from the May 19, 2020 equitable distribution order at 1215 EDA 2020.

Husband filed an IFP petition along with his appeal from the May 19, 2020 economic distribution order. The trial court denied Husband's IFP petition on July 1, 2020. Husband filed a separate appeal from the order denying his IFP petition at 1553 EDA 2020.

Husband filed court-ordered Pa.R.A.P. 1925(b) statements. The trial court filed a responsive opinion that discussed the denial of Husband's IFP petition and Husband's challenges to the equitable distribution order.

Husband presents numerous issues for review, which we have reordered as follows:

1. Whether [the trial court] erred in granting exclusive possession of [the Frankford Avenue apartments] to [Wife] and denying [him] permission to live in one of the three units?

2. Whether [the trial court] erred in awarding attorney fees for *pro se* Patrick Keenan?

3. Whether [the trial court] erred by quashing subpoena upon Mary Schaheen and sealing business records without disclosing to [Husband]?

4. Whether [the trial court] erred by precluding [Husband] from asserting claim against appellee for destroying [Husband's] personal property and exculpatory evidence in [Husband's criminal case]?

5. Whether [the trial court]'s favoritism towards [Wife] resulted a failure to consider 23 Pa.C.S.[] § 3502(a)(1)-(11) factors and inequitable distribution of marital assets without proper valuations?

Husband's Brief at 3-4.[7]  Although not included in his statement of questions involved on appeal, Husband also contends that the trial court's "bias resulted in [the] erroneous denial of [his IFP petition] without [a] hearing," *id.* at 41, and that the trial court erred in denying his motion for the trial judge to recuse. *Id.* at 36.

### Denial of Husband's IFP Petition

We first address Husband's claim that the trial court erred in denying his IFP petition without a hearing.  Husband asserts that the trial court erred in relying on advance distributions it issued to Husband to deny his IFP petition.  Husband cites **Thompson v. Thompson**, 187 A.3d 259 (Pa. Super. 2018), among other cases, for the proposition that the trial court cannot reject allegations in an IFP petition without conducting a hearing.  **Id.** at 42.

Further, Husband contends that he spent the advance distributions[8] on repaying personal loans to support his family and his living expenses following

---

[7] Wife has not filed an appellee's brief.  However, the Numoda entities and Mary Schaheen filed an intervenors' brief in support of affirming several of the trial court's orders.

[8] The trial court ordered two advance distributions to Husband—one in 2018 for $40,000, the other in 2019 for approximately $15,000.

his release from prison. *Id.* at 42-43. According to Husband, his net worth is "negative $150,000," and his assets "are not readily convertible into cash." *Id.* at 43. Husband concludes that the trial court erred by ignoring "the realities of [his] life before and after his incarceration." *Id.* at 44.

This Court will only reverse an order denying an IFP petition if the trial court committed an abuse of discretion or an error of law. *D.R.M. v. N.K.M.*, 153 A.3d 348, 350-51 (Pa. Super. 2016).

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.
>
> An abuse of discretion exists when the trial court has rendered a decision or a judgment which is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias or ill will.
>
> However, our deference is not uncritical. An order may represent an abuse of discretion if it misapplies the law.

*Conway v. Conway*, 209 A.3d 367, 371 (Pa. Super. 2019) (citation omitted).

Pennsylvania Rule of Civil Procedure 240 states, in relevant part, that "[a] party who is without financial resources to pay the costs of litigation is entitled to proceed *in forma pauperis*." Pa.R.C.P. 240(b). Rule 240(h) contains a standard form affidavit that includes information necessary for a court to determine whether the party is entitled to IFP status. *See* Pa.R.C.P. 240(h). If the trial court disbelieves the averments in an IFP petition, the trial

- 8 -

court must hold a hearing to consider the veracity of the allegations. ***Thompson***, 187 A.3d at 265.

In ***Amrhein v. Amrhein***, 903 A.2d 17 (Pa. Super. 2006), this Court reversed the denial of an appellant's IFP petition because the trial court failed to consider all of the allegations, including the appellant's debt, the appellee's arrears on support, and the "realities of life expenditures." ***Amrhein***, 903 A.2d at 24. In ***Thompson***, this Court similarly vacated an order that denied an appellant IFP status when the trial court concluded that the appellant would not have incurred costs if the appellant had made regular support payments. ***Thompson***, 187 A.3d at 265-66. The ***Thompson*** Court concluded that the denial of the petition "was an abuse of discretion because the trial court did not hold a hearing or make findings." ***Id.*** at 266.

In ***Banks v. Ryan***, 556 A.2d 950 (Pa. Cmwlth. 1989), the Commonwealth Court affirmed the denial of an IFP petition when the appellant stated that he owned real property and was employed in prison but did not list the value of the property or his earnings. ***Banks***, 556 A.2d at 952. The ***Banks*** Court agreed with the trial court that the appellant did not substantially comply with Rule 240(h) and reasoned that the appellant "deliberately omitted information crucial to a determination of his true economic status."[9] ***Id.*** at 952-53.

_____

[9] "We note that this Court is not bound by decisions of the Commonwealth Court. However, such decisions provide persuasive authority, and we may
*(Footnote Continued Next Page)*

Instantly, the record establishes that Husband filed an IFP petition and affidavit with his June 9, 2020 notice of appeal. Husband's petition stated that he was unable to pay the fees and costs of the litigation and that he was last employed in 2012. In his attached affidavit, Husband asserted that he had no income in the last twelve months.[10] The trial court denied the petition, noting that it ordered an advance distribution to Husband of $15,000 in the past year. *See* Order, 7/1/20.

Based on this record, we conclude that the trial court's ruling is closer to *Banks* than *Thompson* and *Amrhein*. Similar to *Banks*, the trial court found that Husband's affidavit was incomplete because it did not list Husband's

---

turn to our colleagues on the Commonwealth Court for guidance when appropriate." *Haan v. Wells*, 103 A.3d 60, 68 n.2 (Pa. Super. 2014) (citation omitted and formatting altered).

[10] Specifically, the affidavit attached to Husband's IFP petition read:

(c) Other income in the last twelve months.

| Business or profession: | None |
| Other self-employment: | None |
| Interest: | None |
| Dividends: | None |
| Pension and annuities: | None |
| Social security benefits: | None |

Husband's Aff., May 27, 2020, at 3. We note that the standard form affidavit in Rule 240(h) lists a catch-all item labeled "Other" in the category of "other income within the past twelve months," which Husband did not include in his affidavit. *See* Pa.R.C.P. 240(h).

other income, specifically, the $15,000 that trial court had ordered as an advance distribution within the past twelve months.  **See Banks**, 556 A.2d at 952-53.  Unlike **Thompson** and **Amrhein**, the trial court did not assess the credibility of Husband's allegations that he was unable to afford the costs of his appeal without holding a hearing.  Accordingly, as in **Banks**, we conclude that the trial court properly exercised its discretion in rejecting Husband's incomplete IFP petition, and we affirm the trial court's July 1, 2020 order denying his IFP petition.  **See id.**

**Wife's Exclusive Possession of the Frankford Avenue Apartments**

Husband next challenges the trial court's preliminary orders that granted Wife exclusive possession of the Frankford Avenue apartments in December 2013 and denied Husband's requests to live there in anticipation of his release from prison.  Husband asserts that Wife used the pretext of collecting rents, paying debts, and preventing the dissipation of assets to obtain exclusive possession of the Frankford Avenue properties.  Husband's Brief at 25.  In support, Husband summarizes cases stating that when equitable distribution is pending, the grant of exclusive possession of a marital home requires compelling cause.[11]  **Id.** at 26 (citing, for example, **Laczkowski v. Laczkowski**, 496 A.2d 56, 62 (Pa. Super. 1985)).

_____

[11] Husband also asserts that the trial court granted Wife exclusive possession of the Frankford Avenue apartments on December 10, 2013, "without scheduling [a] telephone hearing[ and] without affording [an] opportunity for [him] to participate and voice his objections . . . ."  Husband's Brief at 28.
*(Footnote Continued Next Page)*

- 11 -

Husband emphasizes that he spent personal funds and efforts to develop and maintain the Frankford Avenue apartments and that Wife lacked a compelling need for exclusive possession of the premises. *Id.* at 27-28. Husband continues that by obtaining exclusive possession of the premises, Wife delayed his release on parole by interfering with his home plan and that the trial court erred in refusing to compel wife to consent to his living at the Frankford Avenue apartments following his release. *Id.* at 29. Husband adds that while the trial court provided him with an advance distribution to obtain housing in 2018, he had difficulties finding housing due to his criminal conviction. *Id.* at 31.

We review the trial court's decision concerning special relief in a divorce action for an abuse of discretion. *Conway*, 209 A.3d at 371.

Section 3323(f) states:

> In all matrimonial causes, the court shall have full equity power and jurisdiction and may issue injunctions or other orders which are necessary to protect the interests of the parties or to effectuate the purposes of this part and may grant such other relief or remedy as equity and justice require against either party or against any third person over whom the court has jurisdiction and who is involved in or concerned with the disposition of the cause.

---

However, even if Husband did not have an opportunity to respond to Wife's petition for exclusive possession, Husband does not develop a claim based on this allegation. *See id.* Although this Court construes *pro se* filings liberally, we cannot act as an advocate and develop appellate arguments on behalf of a party. *Smathers v. Smathers*, 670 A.2d 1159, 1160 (Pa. Super. 1996). We note, however, that Husband had opportunities to litigate issues concerning the Frankford Avenue Apartments at the subsequent hearings in 2016, before his release from prison.

23 Pa.C.S. § 3323(f).

Instantly, in its Rule 1925(a) opinion, the trial court cited Section 3323(f). Trial Ct. Op. at 21. The trial court concluded that Wife's exclusive possession of the Frankford Avenue apartments was necessary to maintain the property while Husband was in prison. *Id.* at 22. Additionally, the trial court stated that Husband's request to live at the Frankford Avenue apartments after his release in the criminal matter was moot due to his "federal incarceration" and the final equitable distribution order awarding the Frankford Avenue apartments to Wife. *Id.*

Following our review, we conclude that the record supports the trial court's ruling to grant Wife exclusive possession of the Frankford Avenue apartments during the pendency of the equitable distribution proceedings. Although Husband lived at the Frankford Avenues apartments during the divorce proceedings, his criminal matter resulted in his detention and imprisonment. The trial court credited Wife's testimony that she had difficulties insuring the property without Husband's signature and that Husband apparently refused to cooperate with her while in prison. *See* Trial Ct. Op. at 21-22; *see also* N.T., 12/16/16, at 63-64. The trial court further credited Wife's testimony that she maintained the Frankford Avenue apartments. Trial Ct. Op. at 22; *see also* N.T., 12/12/16, at 56-61. The trial court therefore ordered her exclusive possession of the Frankford Avenue apartments. As there is support in the record for the trial court's findings of fact, credibility, and legal conclusions, we discern no abuse of discretion or

error of law in the trial court's preliminary rulings concerning Wife's exclusive possession of the Frankford Avenue apartments. *See Conway*, 209 A.3d at 371.

As for the trial court's decision to preclude Husband from returning to the Frankford Avenue apartments following his release from prison in his criminal matter, Husband's arguments merit no relief. Husband refers to the collateral estoppel doctrine, but there is no indication that the criminal court entered an order requiring Husband to return to the Frankford Avenue apartments. *See* Husband's Brief at 28-29. Additionally, Husband refers to his stalking conviction and asserts that the offense gravity score indicated that the offense "cannot be a particularly serious crime." *Id.* at 30-31. Following our review of the record, we conclude that Husband fails to establish an error or an abuse of discretion in the trial court's ruling to deny him permission to live at the Frankford Avenue apartments or to compel Wife to permit him to live there following his release from prison. Accordingly, no relief is due.

**Award of Attorney's Fees to Attorney Keenan**

Husband also contends that the trial court erred in awarding attorney's fees to Attorney Keenan in response to Husband's attempts to raise counterclaims against the Numoda entities and related individuals, including Attorney Keenan. Husband's Brief at 63-65. Husband asserts that the trial court erred because the Numoda entities and related individuals were indispensable parties in the divorce and equitable distribution proceedings and he could have justified their late joinder. *Id.* at 63. Husband further contends

Attorney Keenan was a *pro se* party and, therefore, not entitled to attorney's fees. *Id.* at 64-65. Husband continues that the award of attorney's fees "chilled [him] from pursuing claims against Schaheen *et al* in [a] separate action for their hateful conduct against [him,]" and he insists that his conduct was not dilatory, obdurate, or vexatious pursuant to 42 Pa.C.S. § 2503(7). *Id.* (formatting altered). Husband adds that the trial court improperly awarded attorney's fees because he failed to participate in hearings concerning his counterclaims due to his mental incompetence. *Id.* at 65.

"We review an order imposing sanctions for an abuse of discretion." *Stewart v. Foxworth*, 65 A.3d 468, 471 (Pa. Super. 2013). This Court has stated that "[t]he relentless pursuit of a claim which plainly lacks legal merit warrants an award of counsel fees." *Miller v. Nelson*, 768 A.2d 858, 862 (Pa. Super. 2001) (citation omitted); *accord Oliver v. Irvello*, 165 A.3d 981, 986-87 (Pa. Super. 2017).

Instantly, the record shows that Husband filed several motions to bring the Numoda entities and several individuals associated with the Numoda entities into the divorce action. Specifically, as to the Numoda-related individuals, Husband claimed that Mary Schaheen and Attorney Keenan, among others, slandered him at his home, places of employment and education, and at food and drinking establishments. Husband alleged that they led Wife to believe he had extramarital affairs. Attorney Keenan filed responses on behalf of the Numoda entities and the Numoda-related individuals.

- 15 -

On July 23, 2013, the trial court issued an order dismissing with prejudice Husband's petition to assert cross-claims against Mary Schaheen and Attorney Keenan and others for lack of prosecution. The order prohibited Husband from refiling the petition. Lastly, the order stated as follows:

> Any claim against a third party in a divorce matter may only be asserted by first filing a petition for joinder, which was never done here. Moreover, the claims asserted herein do not lie in a divorce matter. Hence, Husband is precluded from pursuing claims against these parties. Counsel fees are awarded to Attorney Patrick Keenan in the amount of $600.00, which must be paid, which must be paid by Husband on or before September 27, 2013.

Order, 7/23/13.

Following our review, we discern no error in the trial court decision to award attorney's fees. As noted by the trial court, Husband's slander claims did not relate to the divorce or equitable distribution proceedings. Although Attorney Keenan was a named party in the motion, he filed several answers on behalf of the Numoda entities and the other individuals named in the motion as counsel. Therefore, Husband's assertions that Attorney Keenan was not entitled to fees as a *pro se* party lacks support in the record. Furthermore, although Husband asserts that his failure to prosecute his claim or appear at a hearing on the motion resulted from his incompetence,[12] the order stated that his claims against the Numoda and Numoda-related individuals were not

_____

[12] As noted above, the court in Husband's criminal matter found Husband incompetent to stand trial in 2012 and parts of 2013. However, around that time, Husband continued to file *pro se* motions in the divorce matter.

- 16 -

related to the divorce matter. Accordingly, we discern no basis to disturb the order awarding fees to Attorney Keenan.

**Discovery Requests**

Husband next contends that the trial court erred in denying his requests for discovery, subpoenas, and sealing records concerning the Numoda entities. Husband focuses on his right to discovery in equitable distribution matters. Husband's Brief at 32-33. Husband asserts that he was entitled to bank statements because he "informed [the] divorce master that [Wife's brother] is her proxy to park [Wife's] monies and [Wife] didn't file inventory of martial assets." *Id.* at 33. Husband also claims that the trial court erred in quashing a subpoena for Mary Schaheen to testify. *Id.* at 36-37. According to Husband, testimony from Mary Schaheen was necessary to establish the value of the Numoda entities, and that the trial court erred in concluding that that he filed his motions for the purpose of harassment. *Id.* Husband continues that he sent any harassing messages while he was deemed incompetent in the criminal matter and that any potential for harassment at the hearing was limited because he could have examined witnesses by telephone. *Id.* at 37.

We review the trial court's discovery order for an abuse of discretion. ***Virnelson v. Johnson Matthey Inc.***, 253 A.3d 707, 713 (Pa. Super. 2021), *appeal denied*, --- A.3d ---, 238 EAL 2021, 2021 WL 5316734 (Pa. filed Nov. 16, 2021). Pennsylvania Rule of Civil Procedure 1930.5(b) states that: "Discovery shall be available without leave of court in accordance with

Pa.R.C.P. Nos. 4001[-]4025 in alimony, equitable distribution, counsel fee and expense, and complex support proceedings." Pa.R.C.P. 1930.5(b). Pennsylvania Rule of Civil Procedure 4003.1 defines the scope of discovery as "any matter not privileged, which is relevant to the subject matter involved in the pending action," but Rule 4011 prohibits discovery that "is sought in bad faith." Pa.R.C.P. 4003.1(a), 4011(a).

Additionally, an appellant's failure to raise a claim in a Rule 1925(b) statement and cite to the record to support an appellate argument will result in waiver. ***See Matthews v. Prospect Crozer, LLC***, 243 A.3d 226, 230 n.2 (Pa. Super. 2020); ***see also*** Pa.R.A.P. 1925(b)(vii), 2119(a). "When issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review, a Court will not consider the merits thereof." ***Branch Banking & Tr. v. Gesiorski***, 904 A.2d 939, 942-43 (Pa. Super. 2006) (citation omitted). "We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument; instead, we will deem [the] issue to be waived." ***Milby v. Pote***, 189 A.3d 1065, 1079 (Pa. Super. 2018) (citation omitted).

Instantly, the record establishes that Husband asserted the following concerning the trial court's discovery orders in his Rule 1925(b) statement: "[the trial court] made an error in denying [Husband's] Motion for Discovery of marital assets and quashing subpoena upon Mary Schaheen" and "[the trial court] made an error by sealing [Numoda entities'] balance sheets and tax returns, and preventing [Husband] from discovering the current market value

of these businesses." Husband's Rule 1925(b) Statement, 8/17/20, at ¶¶ 4-5. Husband's Rule 1925(b) statement did not assert error in the trial court's denial of Husband's requests for discovery concerning Wife.

The trial court noted that "Husband does not specify which motion for discovery he is referring to out of his multitude of motions" and stated that it "will not venture a guess." Trial Ct. Op. at 17 n.5. Following our review, we agree with the trial court that Husband failed to raise discovery issues concerning Wife in his Rule 1925(b) statement. Therefore, his claims concerning Wife are waived. *See* Pa.R.A.P. 1925(b)(vii), 2119(a).

Additionally, aside from a discussion of the possible relevance of information concerning the Numoda entities, Husband's brief fails to develop any legal argument in the trial court's decision to seal information concerning the Numoda entities. Therefore, this claim is also waived. *Milby*, 189 A.3d at 1079.

However, Husband did preserve claims concerning his discovery requests from the Numoda entities and Mary Schaheen. In addressing these claims, the trial court determined that it "in fact, granted motion for discovery" concerning "copies of the business valuations for [the Numoda entities] for calendar years 2005 (year of parties' marriage), 2010 (year of parties' separation), and 2016 (year of [the bifurcated divorce and reserved ruling on equitable distribution])," including corporate tax returns for 2005, 2010, and 2016 for an *in camera* review. Trial Ct. Op. at 17-18. As to Mary Schaheen, the trial court concluded that her testimony was not necessary due to the fact

that the parties certified the record for the prior master's hearing and because opposing counsel "argued credibly that testimony from Ms. Schaheen would be both unnecessary and amount to continued harassment of Ms. Schaheen by Husband." *Id.* at 19.

Based on the foregoing, we discern no abuse of discretion in the trial court's ruling that, in part, granted discovery as to the Numoda entities, but precluded Husband from compelling testimony from Mary Schaheen. The trial court noted the pattern of Husband's vulgar messages to both Mary Schaheen and Patrick Keenan. Accordingly, Husband's claims concerning the trial court's discovery rulings merit no relief. *Virnelson*, 253 A.3d at 713; *see also* Pa.R.C.P. 4003.1(a), 4011(a).

**Counterclaims against Wife**

Husband's next claim focuses on his assertion that Wife destroyed personal property, including expensive gifts and jewelry, as well as a computer, digital video recordings (DVRs), and computer files that he asserts were necessary to civil lawsuits and his criminal matter. Husband's Brief at 62-63. He alleges that the trial court failed to consider damages that Wife caused to his personal property and the Frankford Avenue apartments and claims that Wife destroyed crucial evidence necessary to prevail in his civil actions and defend himself in the criminal matter. *Id.* Husband adds that the trial court denied him the opportunity to establish that his computer was last stored in the basement of the Frankford Avenue apartments. *Id.* Husband cites cases discussing the spoliation of evidence to support his argument that

Wife had a duty to preserve evidence relevant to his criminal case and other civil cases. *Id.* at 61-62.

As this Court has stated:

Our Supreme Court defined spoliation of evidence in ***Pyeritz v. Commonwealth***, [32 A.3d 687, 692 (Pa. 2011)], as "the non-preservation or significant alteration of evidence for pending or future litigation[,]" and authorized "trial courts to exercise their discretion to impose a range of sanctions against the spoliator." ***See Schroeder v. Commonwealth Department of Transportation***, [710 A.2d 23, 27 (Pa. 1998)]. The doctrine applies "where 'relevant evidence' has been lost or destroyed." Where a party destroys or loses proof that is pertinent to a lawsuit, a court may impose a variety of sanctions, among them "entry of judgment against the offending party, exclusion of evidence, monetary penalties such as fines and attorney fees, and adverse inference instructions to the jury."

***Marshall v. Brown's IA, LLC***, 213 A.3d 263, 267-68 (Pa. Super. 2019) (some citations omitted), *appeal denied*, 226 A.3d 568 (Pa. 2020). The doctrine of spoliation provides that "[w]hen a party to a suit has been charged with spoliating evidence in **that** suit (sometimes called 'first-party spoliation'), we have allowed trial courts to exercise their discretion to impose a range of sanctions against the spoliator." ***Pyeritz***, 32 A.3d at 692 (citation omitted and emphasis added). However, Pennsylvania does not recognize a separate cause of action in tort for spoliation. ***See id.*** at 689-90, 692 (holding that the plaintiffs in an action against the Pennsylvania State Police did not have a cause of action for the State Police's destruction of evidence related to the plaintiffs' separate products liability suit).

Instantly, a review of Husband's Rule 1925(b) statement establishes that Husband did not preserve a separate claim that the trial court erred in precluding his counterclaim against Wife. However, Husband included the issue in a lengthy paragraph challenging the equitable distribution scheme as a whole. Although we could find Husband's claim waived for this reason, we note the trial court addressed the issue in its Rule 1925(a) opinion within the context of its equitable distribution scheme. Specifically, the trial court stated that it properly rejected Husband's claim that Wife retained personal property because Husband failed to offer "proof of the expensive objects he testified about, and the trial court did not find his claims credible . . . ." Trial Ct. Op. at 26. Further, the trial court concluded that "Husband failed to state how his alleged wrongful conviction [and] alleged difficulty finding employment . . . were relevant to the equitable distribution in the instant divorce matter." *Id.*

Following our review, we discern no merit to Husband's spoliation claim. Wife was not an opposing party in Husband's criminal case or his other civil cases. *Pyeritz*, 32 A.3d at 692. To the extent Husband seeks relief in tort, no separate cause of action exists. *See id.* at 689-90, 692. Therefore, we agree with the trial court that Husband failed to establish he was entitled to a spoliation claim against Wife in the instant divorce and equitable distribution proceedings.[13]

_____

[13] To the extent Husband claims that the trial court's equitable distribution order failed to consider his claims that Wife destroyed his personal property
*(Footnote Continued Next Page)*

## Equitable Distribution

As to the trial court's overall equitable distribution, Husband contends that the trial court's rulings all reflected its bias against him and in favor of Wife. Husband's Brief at 24, 37-58. Husband raises numerous arguments concerning the trial court's valuations of marital property and the increases or decreases to the value of Husband's and Wife's assets. *Id.* at 45-58. Husband concludes that the trial court's equitable distribution order was unfair. *Id.* at 24, 45-58. Husband further argues that trial court should have granted his motion to recuse. *Id.* at 38-41.

Our standard of reviewing a trial court's equitable distribution order is well settled:

> A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

---

or caused damage to the Frankford Avenue apartments, we discuss Husband's arguments in relation to his challenge to the equitable distribution.

Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence.

*Brubaker v. Brubaker*, 201 A.3d 180, 184 (Pa. Super. 2018) (citation omitted).

Section 3502(a) states:

**(a) General rule.—**Upon the request of either party in an action for divorce or annulment, the court shall equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors. The court may consider each marital asset or group of assets independently and apply a different percentage to each marital asset or group of assets. Factors which are relevant to the equitable division of marital property include the following:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S. § 3502(a).

Additionally, Section 3501(a.1) states:

**(a.1) Measuring and determining the increase in value of nonmarital property.—**The increase in value of any nonmarital property acquired pursuant to subsection (a)(1) and (3) shall be measured from the date of marriage or later acquisition date to either the date of final separation or the date as close to the hearing on equitable distribution as possible, whichever date results in a lesser increase. Any decrease in value of the nonmarital property of a party shall be offset against any increase in value of the nonmarital property of that party. However, a decrease in value of the nonmarital property of a party shall not be offset against any increase in value of the nonmarital property of the other party or against any other marital property subject to equitable division.

23 Pa.C.S. § 3501(a.1).

On appeal, Husband reviews the Section 3502(a) factors and argues that the balance of those factors favors him. In support, Husband asserts that the trial court failed to consider his unemployability due to the stigmas of his mental health condition and criminal conviction. Husband's Brief at 48.

Husband further contends that the trial court did not ascertain Wife's employment and eligibility for benefits at the time of the 2020 equitable distribution and her capacity to acquire future assets and income. *Id.* at 48-50. Husband reiterates that Wife and others were complicit in undermining his former career, ensuring his criminal conviction, and encouraging his deportation. *Id.* at 49-50.

Husband emphasizes that the trial court failed to consider the value of the property distributed, including the value and income from Frankford Avenue apartments, personal items retained by Wife, and the values of the Numoda entities. *Id.* at 51-52. Husband further contends that the trial court erred in using "stale" valuations of the real estate and Numoda entities and the practical difficulties that he would confront when obtaining value from Wife's shares in Numoda Corporation and Numoda Technologies.[14] *Id.* at 55-58

---

[14] We note that Husband also asserts that the trial court improperly valued Numoda Capital as having a negative worth based on its "book value." Husband asserts that using a "mark-to-market value of its securities in bio-tech companies" was more appropriate. Husband's Brief at 58. It appears that Husband contends that the trial court should have assessed the Numoda Capital, in which Wife retained her interest, at a greater value than it did based on Numoda Capital's investments and adjusted its equitable distribution scheme accordingly. *Id.* However, Husband does not indicate where in the record he preserved a claim that it was improper to value Numoda based on its tax returns. *See* Pa.R.A.P. 2119(e). Furthermore, aside from the boilerplate argument in his brief, Husband has not developed his argument in any meaningful fashion. Therefore, we are constrained to find this claim waived. *See Smathers*, 670 A.2d at 1160.

Instantly, the trial court addressed Husband's challenges to the equitable distribution as follows. First, the trial court concluded that Husband's assertions that the trial court failed to consider the market values, contributions by the parties, and debts and liabilities associated with the real properties lacked merit because the trial court considered all of the evidence presented at the hearing. Trial Ct. Op. at 25. Second, the trial court stated that it properly rejected Husband's claim that Wife retained personal property, because Husband failed to offer "proof of the expensive objects he testified about, and the trial court did not find his claims credible . . . ." *Id.* at 26. Third, the trial court concluded that "Husband failed to state how his alleged wrongful conviction, alleged future difficulty in obtaining employment, his mental/physical health, and his deportation proceedings were relevant to the equitable distribution in the instant divorce matter." *Id.* The trial court continued that Husband did not present evidence to support his claim, while Wife "credibly testified regarding her difficulties finding and maintaining employment" due to her physical health conditions, the "psychiatric distress" caused by Husband's abuse and stalking, and the time she spent in court related to "Husband's serial filing in the instant matter." *Id.* at 26-27. Fourth, the trial court stated that it "used all information it had available to determine the value of the Numoda entities and any stock held by Wife." *Id.* at 27.

Following our review, we discern no basis to disturb the trial court's findings of fact and credibility, which have support in the record. *See* *Brubaker*, 201 A.3d at 184. Contrary to Husband's argument, the trial court

had information regarding the valuations of the Frankford Avenue apartments and the Numoda entities. The trial court acted in its discretion when rejecting Husband's assertions, which lacked support in the record. ***See id.*** Further, aside from his own allegations, Husband has not produced evidence showing that the valuations of the assets and liabilities within the marital estate were unreasonable. For these reasons, we conclude that Husband has not established an abuse of discretion in the trial court's equitable distribution scheme. ***See id.*** Accordingly, no relief is due.

## Motion to Recuse

We last address Husband's claims that the trial court erred in denying his motion to recuse. Husband asserts that the trial court's rulings on his motions and the court's equitable distribution scheme established the court's bias in favor of Wife. Husband's Brief at 24, 38-41.

Our standard of review is well settled:

We review a trial court's decision to deny a motion to recuse for an abuse of discretion. Indeed, our review of a trial court's denial of a motion to recuse is exceptionally deferential. We extend extreme deference to a trial court's decision not to recuse. We recognize that our trial judges are honorable, fair and competent, and although we employ an abuse of discretion standard, we do so recognizing that the judge himself is best qualified to gauge his ability to preside impartially. Hence, a trial judge should grant the motion to recuse only if a doubt exists as to his or her ability to preside impartially or if impartiality can be reasonably questioned.

***Interest of D.R.***, 216 A.3d 286, 292 (Pa. Super. 2019), *aff'd*, 232 A.3d 547 (Pa. 2020).

Instantly, the trial court explained its denial of Husband's motion to recuse in its Rule 1925(a) opinion, noting that it equitably distributed the marital assets and debts to each party and that Husband's claims of bias were "simply unfounded." Trial Ct. Op. at 13. Following our review of Husband's arguments, we agree. As described herein, we have reviewed Husband's claims, and we discern no basis to conclude that the trial court abused its discretion. Husband's argument for recusal of the trial judge because she ruled against him merits no relief. *See D.R.*, 216 A.3d at 292. For these reasons, we affirm the order denying Husband's motion to recuse, and finding no meritorious issues in this appeal, we affirm the trial court's equitable distribution order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/25/2022