J-A22032-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SILVIA SANTO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHAD BATTERMAN | : | |
| | : | |
| Appellant | : | No. 3350 EDA 2024 |

Appeal from the Order Entered December 6, 2024
In the Court of Common Pleas of Bucks County Domestic Relations at
No(s):  2024DR00154

BEFORE:   LAZARUS, P.J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED NOVEMBER 21, 2025**

Appellant, Chad Batterman, appeals *pro se* from the December 6, 2024, order entered by the Honorable Judge James M. McMaster in the Court of Common Pleas of Bucks County finding Appellant in contempt of court for failure to make child support payments as ordered (*hereinafter* "the December Order"). After careful review, we affirm.

Preliminarily, we note that Appellant filed two appeals close in time, both arising from the underlying support matter before the Honorable Judge McMaster. The first appealed from the November 18, 2024, Order of the trial court denying Appellant's petition for modification of child support and denying his request for *in forma pauperis* status (*hereinafter* "the November Order").

_____

[*] Former Justice specially assigned to the Superior Court.

As Appellant initiated the instant appeal shortly thereafter, the lower court addressed both matters in one Opinion, dated February 3, 2025.

We note that, in his brief, Appellant attempts to do the same. *See* Appellant's Brief at 45 ("As the Trial Court combined Appeals 3258 EDA 2024 and 3350 EDA 2024 as seen in its Opinion. [sic] Appellant for judicial economy is doing same in this Brief"). However, due to the fact that Appellant appealed these orders separately and that he submitted a separate brief in the matter docketed at 3258 EDA 2024, this Court has already affirmed the November Order in a memorandum decision filed May 21, 2025. Thus, insofar as Appellant's brief in the matter *sub judice* addresses the November Order, we will not consider his arguments thereto nor revisit our prior decision.

Furthermore, in our May 21, 2025, memorandum we observed that Appellant's statement of errors complained of relative to the November Order consisted of "five pages [containing] 27 paragraphs in a rambling, incohesive fashion," followed by a brief which was "largely nonsensical and lack[ed] conformity with the Rules of Appellate Procedure." ***Santo v. Batterman***, 3258 EDA 2024 (Unpublished Memorandum dated May 21, 2025, at 2); *see also* Pa.R.A.P. 1925(b)(4)(i), (ii), (iv). We lamented "[e]ven applying a liberal construction of the brief due to his self-represented status d[id] not remedy many of the brief's inadequacies, thereby precluding meaningful appellate review." ***Id.*** at 2-3. Here, we are faced with the same deficiencies in Appellant's instant filings, where Appellant's statement of matters complained

of on appeal addressing the December Order consists of 49 paragraphs and spans eight pages, and the "errors" complained of are remarkably vague and redundant. In response to Appellant's manifestly unwieldy statements of errors complained of on appeal, the trial court reasoned in its Opinion addressing both appeals:

> [W]e believe that Father's appeals comprise of three complaints: (1) our denial of Father's Petition for Modification of Support, (2) our denial of Father's Petition for In Forma Pauperis, and (3) our decision to find Father in contempt.

Trial Court Opinion 2/3/25 at 3.

After careful review, we agree with the assessment of the trial court, and, having addressed Appellant's first and second complaints arising from the November Order in the matter docketed at 3258 EDA 2024, we review only his final complaint here addressing the December Order. However, we observe that Appellant's brief is, again, woefully deficient, "largely nonsensical, and lacking conformity with the Rules of Appellate Procedure" to a degree that precludes meaningful review. What argument we can discern through the mire is entirely without merit.

Therefore, we again find the comprehensive Opinion filed by the Honorable Judge McMaster on February 3, 2025, to constitute a thorough analysis of the issue presented, and we conclude that the December 6, 2024, Order of the trial court should be affirmed. Thus, we affirm on the basis of that Opinion and attach the same hereto.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>11/21/2025</u>

## IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
## FAMILY DIVISION

SILVIA SANTO : NO.: 2024-DR-00154
           Appellee :
       v. :
            : PACSES: 267116855
CHAD BATTERMAN :
           Appellant :

### OPINION

Appellant, Chad Batterman ("Father"), moving *pro se*, appeals from two orders by this Court. The first is an Order entered by this Court on November 18, 2024 denying both Father's Petition for Modification of Support and *In Forma Pauperis* Petition. The second appeal is from the Order dated December 6, 2024, which found Father in contempt. For the reasons discussed below, we recommend our Orders be affirmed.

### BACKGROUND

Mother, Silvia Santo ("Mother") and Father are the natural parents of two minor children: C.B., born on October 20, 2015 and D.B., born on October 10, 2017.

This case was bought in Bucks County by being transferred from Philadelphia County Court of Common Pleas. A Philadelphia Order dated September 26, 2023 directed Father to pay $674.48 per month plus $51.00 in arrears. Through an Order dated April 25, 2024, this Court registered the Foreign Support Order Number 17-01602 issued by the Philadelphia County Court effective August 23, 2023, which directed Father to pay $674.48 per month for the children, with arrears of $28,575.23.

1

On June 20, 2024, a Petition for Contempt was filed against Father. As of that date arrears totaled $29,924.19.

Father filed a modification petition on August 2, 2024.

Father filed his petition for *in forma pauperis* on November 7, 2024.

Father filed his first appeal on December 5, 2024, from the Order dated November 18, 2024 in which this Court denied Father's Petition for Modification of Support and denied the *In Forma Pauperis* Petition, 2024. The Order also directed the Bucks County Domestic Relations Section to issue an Order for the Release of Information from the Law Firm of Leonard Sciolla and Zurich American Institute Insurance Company for information regarding lawsuits and settlement proceeds on behalf of or made available to Father.

Father's second appeal was filed December 16, 2024, from an Order dated December 6, 2024 in which this Court found Father in contempt for willfully failing to pay the court ordered amount while having the financial ability to pay. Father was remanded Bucks County Correctional Facility for six months effective December 6, 2024 with a purge amount of $25,000.00, which was immediately paid.

## STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

Father filed both of his Concise Statement of Matters Complained of on Appeal as required by Pa. R.A.P. 1925(b). We respectfully suggest both appeals be quashed as a clear violation of Rule 1925(b).

2

A. Appeal from Order Dated November 18, 2024

In Father's first appeal of the Order dated November 18, 2024, this Court points out that this Statement is not concise. It is attached as Exhibit A. The body of it is 5 pages and 27 paragraphs long plus exhibits. It is a redundant statement in violation of Pa. R.A.P. 1925(b)(4)(i)(ii)(iv). We respectfully suggest that his appeal be quashed as a clear violation of Rule 1925(b).

B. Appeal of the Order dated December 6, 2024

In Father's second Concise Statement of Matters Complained of on Appeal of the Order dated December 6, 2024, this Court points out the Statement is 8 pages and 49 paragraphs long plus exhibits. Similarly, it is violation of Pa. R.A.P. 1925(b)(4)(i)(ii)(iv). We respectfully suggest that his appeal be quashed as a clear violation of Rule 1925(b). Father's second Concise Statement of Matters Complained of on Appeal for his appeal of the Order December 6, 2024 order is attached as Exhibit B.

If the combined appeals are not quashed we believe that Father's appeals comprise of three complaints: (1) our denial of Father's Petition for Modification of Support, (2) our denial of Father's Petition for *In Forma Pauperis*, and (3) our decision to find Father in contempt.

**STANDARD OF REVIEW**

In reviewing child support orders, appellate courts employ an abuse of discretion standard of review. *Colonna v. Colonna*, 855 A.2d 648, 652 (Pa. 2004). For *In Forma Pauperis* petitions, the standard is whether the trial court

3

committed an abuse of discretion or an error of law. *D.R.M. v. N.K.M.*, 153 A.3d 348, 350-51 (Pa. Super. 2016). Lastly, in determining appeals from contempt, the Superior will reverse only upon a showing of an abuse of discretion. *Diamond v. Diamond*, 792 A.2d 597, 600 (Pa. Super. 2002). An abuse of discretion exists when the trial court has rendered a decision or a judgment which is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias or ill will. *Conway v. Conway*, 209 A.3d 367, 371 (Pa. Super. 2019).

## DISCUSSION

Father appeals two orders issued from this Court. The first is an Order entered by this Court on November 18, 2024 denying both Father's Petition for Modification of Support and the *In Forma Pauperis* Petition. The second appeal is from the Order dated December 6, 2024, in which this Court found Father in contempt. Concluding the multiple days of hearings on this case, we found Mr. Batterman was not a credible witness.

A. Order Dated November 18, 2028
1. Petition for Modification of Support

Father's Petition for Modification of Support was filed on August 2, 2024. By Order dated November 18, 2024, this Court denied Father's Petition. Generally, child support is based on the parties' monthly net incomes. Pa. R.C.P. 1910.16-2. Support law defines "income" to include income from any source. 23 Pa. C.S.A. § 4302. This includes, but is not limited to wages, salaries, bonuses, fees, commissions, net income from business or dealings in property, interests, rents,

4

royalties, and dividends, pensions and all forms of retirement, Social Security disability benefits, Social Security retirement benefits, temporary and permanent disability benefits, workers' compensation, and unemployment compensation; as well as other entitlements to money or lump sum awards, without regard to source, including lottery winnings, income tax refunds, insurance compensation or settlements, awards and verdicts, and payments due to and collectible by an individual regardless of source. Pa. R.C.P. 1910.16-2(a). The only items eligible for deduction to arrive at the accurate monthly net income are federal, state, and local income taxes; unemployment compensation taxes and Local Services Taxes; F.I.C.A. payments and non-voluntary payments; mandatory union dues; and alimony paid to the other party. Pa.R.C.P. 1910.16-2(c).

In determining a party's ability to provide support, the focus is on earning capacity rather than on the parent's actual earnings. *Calibeo v. Calibeo*, 663 A.2d 184 (Pa. Super. 1995). When a party willfully fails to obtain, or fails to maintain appropriate employment, the courts may impute to the party an income equal to that party's earning capacity. Pa. R.C.P. 1910.16-2(4)(i); *Portugal v. Portugal*, 798 A.2d 246, 250 (Pa. Super. 2002). In determining earning capacity, the court must look not to what the spouse could theoretically earn, but what they could realistically earn considering each party's:

(A) Child care responsibilities and expenses;
(B) Assets;
(C) Residence;
(D) Employment and earnings history;
(E) Job skills;
(F) Educational attainment;
(G) Literacy;
(H) Age;

5

(I) Health;
(J) Criminal record and other employment barriers;
(K) Record of seeking work;
(L) Local job market, including the availability of employers who are willing to hire the party ;
(M) Local community prevailing earnings level; and
(N) Other relevant factors
Pa.R.C.P. 1910.16-2(d)(4).

As to Father's Petition for Modification of his support obligation, Rule 1910.19 provides that a petition for modification or termination of an existing support order shall specifically aver the material and substantial change in circumstances upon which the petition is based. The burden of proof is on the petitioner who seeks to modify or terminate the order. *Jeske v. Jeske*, 423 A.2d 1063 (Pa. Super. 1981). Rule 1910.19(c) allows the Court to modify or terminate the existing support order in any appropriate manner based on the evidence presented without regard to which party filed the petition for modification. If the court determines there has been a material and substantial change in circumstances, the order may be increased or decreased based on the parties' respective monthly net incomes, consistent with the support guidelines, existing law, and Pa. R.C.P. No. 1910.18(d), and the party's custodial time with the child at the time the modification petition is heard. We have explained why Father failed to meet his burden below.

Father's earning capacity was determined by the Philadelphia County Court of Common Pleas. The Support Guideline Calculation assessed Father to have a total gross monthly earning of $3,000 and a net monthly income of $2,018.91. At the time of the Philadelphia County's determination, the child support calculation was $686.00.

6

The conference officer proposed to increase Father earning capacity from $36,000 a year to $52,000 a year. N.T. 11/18/2024, p. 44. 4-6. Father owned a software development company and was given earning capacity based on the guideline calculation for a computer information occupation. N.T. 11/18/2024, p. 44. 8-11. Father went to Northeastern University and has a bachelor's degree in management marketing. N.T. 11/18/2024, p. 62. 17-21. Prior to owning the software development company, Father did facilities and operations, for conference centers his parents own and operate. N.T. 11/18/2024, p. 44. 19-21. The facility is 33-acres with 20 buildings on the property. *Id.* at 25; *Id.* p. 61. 3. Father argues that the facilities and operations would bring the earning capacity down to what he would have the ability to earn. *Id.* at 21-22. Facilities operations included setting up chairs for the conference center, making sure everything was cleaned and organized, and making sure the sleeping accommodations were ready. N.T. 11/18/2024, p. 60. 21-23.

In order for this Court to modify Father's support obligation, Father had to show there was a substantial change in circumstance. Father has allegedly not received any income in numerous years. N.T. 8/2/2024, p. 24. 7-9. Father allegedly has not been able to work due to multiple injuries since 2019. N.T. 8/2/2024, p. 8. 4-5.

We mention Father's most recent complaints about his alleged back injury and chest. Father appears to have visited a variety of doctors, and yet there is no explanation of Father's conditions or why he is not able to work. While Father had submitted Physician Verification Forms (PVF), they were based on Father's

7

self-reporting of his multiple alleged injuries and not objective testing results. The PVF for Father's back by Dr. Douglas Sutton, states that it is unknown as to when father will be able to return to work or what his limitations are, dated September 12, 2024. Dr. Hal Hockfield states in his PVF dated August 20, 2024, that that it is unknown as to when father will be able to return to work or what are his limitations. As to father's chest complaints, on October 25, 2024, Dr. John Dudzinski states it is unknown as to Father's date to be able to return to work and his limitations will be determined after testing. In another PVF from Dr. Zakrzewski dated October 22, 2024 states Father has a medical condition that affects his ability to earn an income with an unknown end date, it is unknown when father will be able to return to work or what the limitations are, but he is seeing a specialist in ortho and cardiology.

Importantly, Father applied for Social Security disability benefits but was denied. N.T. 8/2/2024, p. 31. 15-19. Father did not appeal the denial. N.T. 11/18/2024, p. 45. 3-4. In response to Father's Social Security denial, Father stated, "I don't have a disability, that's correct." N.T. 8/2/2024, p. 31. 18.

In denying Father's Petition for Modification, this court determined that Mr. Batterman was not a credible witness and intentionally deceived the Court and his doctors about his ability to work. Father has previous experience in owning a software development company, which the guideline calculation set Father's earning capacity to be at $3,000.00 a month. He also has experience working for his parents' conference center. Since the order was entered, Father has not shown a substantial change in circumstances. As a matter of fact, there

8

has not been any change at all. Father is still complaining of multiple injuries. Father is stating he is unable to work, but none of the Physician Verification Forms confirm that he is unable to work, instead they state that it is unknown as to when Father may return to work. For the stated reasons, we denied Father's Petition for Modification of Support. Therefore, our Order dated November 18, 2024 should be affirmed.

### 2. Petition for In Forma Pauperis

The next part of our Order dated November 18, 2024 Father is appealing is this Court's denial of Father's Petition for *In Forma Pauperis*. According to Pennsylvania Rules of Civil Procedure 240, the rule applies to all civil actions and proceedings except actions pursuant to the Protection From Abuse Act and Protection of Victims of Sexual Violence or Intimidation Act. Pa. R.C.P. 240. A party who is without financial resources to pay the costs of litigation is entitled to proceed *in forma pauperis*. Pa. R.C.P. 240(b). The affidavit in support of a petition for *in forma pauperis* shall include: (1) I am the (plaintiff) (defendant) in the above matter and because of my financial condition am unable to pay the fees and costs of prosecuting or defending the action or proceeding; (2) I am unable to obtain funds from anyone, including my family and associates, to pay the costs of litigation; and (3) I represent that the information below relating to my ability to pay the fees and costs is true and correct. Pa. R.C.P. 240(h). The mere filing of a petition for in forma pauperis status will not automatically establish the petitioner's right to proceed in that status. *Nicholson v. Nicholson*, 371 A.2d 1383, 1384 (Pa. Super. 1977). The trial court must satisfy itself of the

9

truth of the averment of inability to pay. *Id.* The trial court has considerable discretion in determining whether a person is indigent for purposes of an application to proceed *in forma pauperis*, however, in making that determination, it must focus on whether the person can afford to pay and cannot reject allegations in an application without conducting a hearing. *Commonwealth v. Cannon*, 954 A.2d 1222, 1226 (Pa. Super. 2008) (citing *Amrhein v. Amrhein*, 903 A.2d 17, 19 (Pa. Super. 2006)).

Father appeals this Court's denial of his Petition for *In Forma Pauperis* in Order dated November 18, 2024. Father filed his Petition for *In Forma Pauperis* on November 7, 2024. This Court held a hearing on Father's petition on November 18, 2024. Based on testimony provided during the hearing, this Court found Father with the financial resources to pay the costs of litigation and not entitled to proceed *in forma pauperis*.

This Court points out Father lives at a business owned by his parents, with a conference center and a corporate retreat center where Father can get food, but he is not paying for the food, the business does. N.T. 11/18/2024, p. 53. 11-16. This is the same business where Father previously worked. Father's parents cover his rent, utilities and costs of living. N.T. 8/2/2024, p. 7. 13-17. Similarly, Father stated he had travel expenses. N.T. 8/11/2024, p. 14. 15-18. Later, Father stated, "I don't have -- I don't have -- I don't pay any expenses. I have access to one of my father's vehicles every now and then, but there's no expenses that I incur for using that vehicle." *Id.* at 20-23. The rule states *in forma pauperis* petitions are for a party who is without any financial resources. As part

10

of the petition, they have to state they're unable to obtain funds from anyone, including family. Father's family has paid his fees in the past, it would not be incredible to believe that they would not pay the fees today. N.T. 11/18/2024, p. 107. 15-22. Father's parents continue to pay for all of his expenses.

Most importantly, Father has funds held in escrow from a personal injury settlement. The total settlement amount was $52,499.00, after attorney fees, cost, and lien by Independence Blue Cross, the net proceeds available to Father are $25,427.78. See Exhibit M-3, Settlement/Distribution Statement from Hearing dated 12/6/24. Overall, Father was evasive and allegedly could not remember details about the settlement checks or documents received from his attorney. *See generally*, N.T. 12/6/24, p. 15-18. When asked about the settlement, Father stated numerous times "I don't recall," "I don't remember," and "I have no idea." N.T. 12/6/24, p. 15. 10, 12, 18, 25. Father allegedly did not recognize the Settlement Distribution Statement and allegedly did not remember signing the document at any time. N.T. 12/6/24, p. 15. 5-18. Father did sign the General Release form for an accident occurring in January 2019 with a total settlement amount of $52,499.00. Father was aware that one of the checks for the settlement was cashed and the other two were not. N.T. 12/6/24, p. 16. 9-12. But Father could not remember signing the other two. N.T. 12/6/24, p. 16. 1-2. Father was found to be deceptive in court, as to his knowledge of his settlement of his personal injury case. N.T. 12/6/24, p. 30. 23-25. We determined that Father had ready access to the $25,427.78 from his personal

injury settlement and he was deliberately failing to finalize his settlement to avoid paying his support or the costs of his extensive court proceedings.

This Court determined Father was capable of gainful employment. By Order dated August 2, 2024 Defendant was handed job search forms during the hearing. Father's response for not filling out the Job Search Forms was, "I have no idea what to do with that. I was handed it. Your Honor said you were just concerned if I was able to work. I've never received one before. I had no idea that I was supposed to do anything with that." N.T. 8/16/2024, p. 12. 4-8. As a response, this Court entered another Order dated August 16, 2024, stating Defendant was provided with Job Search Form and is to be completed and provided at the rescheduled hearing. According to the Job Search Forms, Father applied to Home Depot, Lowe's, Target, and Best Buy, even though he believed he could not work, lift, or bend. N.T. 11/4/2024, p. 15. 16-18. In response, Father stated, "I don't have to -- what's to say I can't sit down at Home Depot? You can be a greeter at Home Depot. You can work in customer service, sitting on a chair in Home Depot. They have -- they comply with the U.S. Disabilities Act. There's disabled individuals working there, and I'm disabled the same." N.T. 11/4/2024, p. 15. 22-25; p. 16. 1.

The Physician Verification Forms do not state Father is unable to work in sedentary position, at a computer. 11/4/2024, p. 27. 22-25. In the hearing dated August 2, 2024, Father was able to carry a United States Postal Service Box and backpack. 8/2/2024, p. 33. 5-7. During another hearing, Father was able to sit at his computer and type fast without any issues. 11/18/2024, p. 107. 1-2.

12

Father was able to stand without an issue. *Id.* at 2-3. Father was able to carry around a box, clearly showing like there was not an issue with bending or lifting objects. *Id.* at 4-6.

Concluding the hearing, this Court determined that Father was not indigent and denied his application to proceed *in forma pauperis.* Father was determined to be able to afford to pay for the cost of the litigation. This Court found Mr. Batterman was not a credible witness. N.T. 12/6/24, p. 30. 19-20. We believe Mr. Batterman was intentionally deceiving the Court and his doctors about his ability to work. N.T. 12/6/24, p. 30. 20-21. The evidence suggests that he is continuing to work for the business his parents own and they are compensating him for his work by paying all of his expenses for him. For the stated reasons, we denied Father's Petition for In Forma Pauperis. Therefore, our Order dated November 18, 2024 should be affirmed.

### B. Contempt Order Dated December 6, 2024

Father's second appeal is to this Court's Order dated December 6, 2024 where we found Father in contempt. Under Pennsylvania law, a person who willfully fails to comply with any order under this chapter may be adjudged in contempt. 23 Pa. C.S.A. § 4345(a). Contempt shall be punishable by any one or more of the following: (1) Imprisonment for a period not to exceed six months; (2) A fine not to exceed $1,000; (3) Probation for a period not to exceed one year. *Id.* An order committing a defendant to jail under this section shall specify the condition the fulfillment of which will result in the release of the obligor. 23 Pa. C.S.A. § 4345(b). To be found in civil contempt, a party must have violated a

13

court order. *Hyle v. Hyle,* 868 A.2d 601, 604 (Pa. Super. 2005) (citing *Garr v. Peters,* 773 A.2d 183, 189 (Pa. Super. 2001)). For a finding of civil contempt, the complainant must prove (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent. *Habjan v. Habjan,* 73 A.3d 630, 637 (Pa. Super. 2013). The alleged contemnor may then present evidence that he has the present inability to comply and make up the arrears. *Id.* The court, in imposing coercive imprisonment for civil contempt, should set conditions for purging the contempt and effecting release from imprisonment with which it is convinced beyond a reasonable doubt, from the totality of the evidence before it, the contemnor has the present ability to comply. *Hyle v. Hyle,* 868 A.2d 601, 604-5 (Pa. Super. 2005).

In the present case, Father violated a Court order, the Order dated April 25, 2024 registering the Foreign Support Order Number 17-01602 issued by the Philadelphia County Court, where he was directed to pay $674.48 per month. As of August 8, 2024, Father was out of compliance of the Order since the beginning of the year in an amount of $5,078.36 with arrears in the total amount of $31,273.15. N.T. 8/2/24, p. 4. 19-22. Since the order was registered in Bucks County, there has been no payments. N.T. 8/2/24, p. 6. 24-25. Father has $25,427.78 from a personal injury settlement held in escrow. N.T. 11/18/24, p. 55. 2-4; See Exhibit M-3, Settlement/Distribution Statement from Hearing dated 12/6/24.

14

This Court points out that Father made similar arguments for his present contempt proceedings in Philadelphia County. Attached as Exhibit C is the Superior Court's recent decision affirming the Philadelphia County's contempt finding. The Superior Court has affirmed the Philadelphia County's Order of finding Father in contempt of an Order dated February 20, 2020 directing Father to pay $674.48 per month for the children. *Batterman v. Santo*, No. 469 EDA 2024, slip op. at *1 (Pa. Super. 2025). The Philadelphia County Court found Father in contempt on January 11, 2024, with a purge amount of $5,000.00. *Id.* at *1.

This Court found Mr. Batterman was not a credible witness. <u>N.T. 12/6/24</u>, p. 30. 19-20. As a result of finding Mr. Batterman in contempt of the Order, Father was sentenced to a period of incarceration at the Bucks County Correctional Facility of six months with a purge condition of paying the $25,000 that he clearly has available to him under the Settlement Distribution Statement. <u>N.T. 12/6/24</u>, p. 31. 1-6. For the stated reasons, we found Father in Contempt of Court for willfully failing to comply with an Order. We found that Father had the present ability to comply with the Support Order and met the purge condition of $25,000. In fact, the $25,000 was paid in full for Father within hours of our contempt Order. Therefore, our Order dated December 6, 2024 should be affirmed.

## CONCLUSION

This Court did not abuse its discretion in issue the Order dated November 18, 2024 denying Father's Petition for Modification and *In Forma Pauperis*. In

this Court's Order dated December 6, 2024, this Court did not abuse its discretion in finding Father in contempt. Therefore, our Orders should be affirmed.

BY THE COURT

DATE: 2-3-25

_James M. McMaster, J._

**COPIES SENT TO:**

Chad Batterman, *Pro Se*
1400 Sackettsford Road
Ivyland, Pennsylvania 18974


Silvia Santo, *Pro Se*
232 Mankin Avenue
Huntingdon Valley, Pennsylvania 19006


Bucks County Domestic Relations Section
100 N Main Street
Doylestown, PA 18901

# EXHIBIT A

BY: CHAD BATTERMAN, PRO SE     Defendant/Petitioner

1400 Sackettsford Road

Ivyland, PA 18974

(610) 587-0036

2025 JAN -2 P 4: 09

RECEIVED
DOMESTIC RELATIONS
SECTION

_____

SILVIA SANTO

       vs.

CHAD BATTERMAN

_____

:
:    COURT OF COMMON PLEAS
:    BUCKS COUNTY, PA
:    SUPPORT DIVISION
:
:
:    PACSES NO. 267116855
:    DOCKET NO. 2024DR00154
:

## STATEMENT OF ERRORS COMPLAINED OF ON APPEAL

The lower court erred in its Order of November 18, 2024, Exhibit A(docketed November 25, 2024), for the following reasons:

1. The Judge erred as a matter of law by denying Appellant's in forma pauperius.

2. The Judge erred as a matter of law by failing to provide Appellant fair and reasonable notice by holding a "special listing" hearing on Appellant's in forma pauperius petition on the same day the Court provided Appellant notice of said hearing.

3. The Judge erred as a matter of law by denying Appellant's "PETITION TO SUSPEND AND/OR MODIFY(DECREASE) CHILD SUPPORT AND ALIMONY

 ENTERED



SU001

PENDENTE LITE ORDER."

4. The Judge erred as a matter of law by failing to suspend the Support Order.

5. The Judge erred as a matter of law by failing to modify (decrease) the Support Order.

6. The Judge erred as a matter of law by failing to retroactively suspend the Support Order.

7. The Judge erred as a matter of law by failing to retroactively modify the Support Order.

8. The Judge erred as a matter of law by ignoring Appellant's Physician Verification Forms submitted and moved into the Court record.

9. The Judge erred as a matter of law by refusing to allow Appellant to present evidence, exhibits, and testimony to the Court regarding Support prior to the Support Case being transferred from Philadelphia County Court of Common Pleas (Family Court) to Bucks County Court of Common Pleas, and admit the evidence into the record.

10. The Judge erred as a matter of law by failing to allow Appellant to admit relevant evidence into the record.

11. The Judge erred as a matter of law by failing to allow Appellant to ask Appellee certain several relevant questions during Appellee's testimony.

12. The Judge erred as a matter of law by allowing Appellee and Appellee's Court appointed attorney's to seek discovery by issuance of a subpoena in a Support Case on third parties including but not limited to Appellant's attorney represented Appellant in a personal injury case.

13. The Judge erred as a matter of law by allowing Appellee and Appellee's Court appointed attorneys to use the discovery they received from their issued subpoena in the Support Case.

14. The Judge erred as a matter of law by allowing Appellee and Appellee's Court appointed attorneys to use the discovery they received from their issued subpoena in the Support Case, despite Appellee's attorneys failing to serve Appellant a copy of the subpoena.

15. The Judge erred as a matter of law by failing to take into consideration the reason why arrears were so high were due to Appellant not being able to work and the inexcusable extreme delay by the Trial Court to hold a hearing on Appellant's Petition to Modify Support in the Philadelphia Court of Common Pleas (Family Court).

16. The Judge erred as a matter of law by providing Appellee an attorney to represent her and make arguments for Appellee regarding Appellant's in forma pauperius petition.

17. The Judge erred as a matter of law by providing Appellee an attorney to represent

her and make arguments for Appellee regarding Appellant's "PETITION TO SUSPEND AND/OR MODIFY(DECREASE) CHILD SUPPORT AND ALIMONY PENDENTE LITE ORDER."

18. The Judge erred as a matter of law by holding a hearing on Appellant's "PETITION TO SUSPEND AND/OR MODIFY(DECREASE) CHILD SUPPORT AND ALIMONY PENDENTE LITE ORDER," when his Honor did not have jurisdiction to hold a hearing to modify support, since Appellant had pending appeals with the Superior Court of Pennsylvania regarding support.

19. The Judge erred a matter of law by holding a hearing on Appellant's "PETITION TO SUSPEND AND/OR MODIFY(DECREASE) CHILD SUPPORT AND ALIMONY PENDENTE LITE ORDER," instead of issuing a stay on Appellant's petition to modify support until the Superior Court had ruled upon Appellant's pending appeals with the Superior Court of Pennsylvania regarding support.

20. The Judge erred as a matter of law by forcing Appellant to provide Appellee and Appellee's attorneys his evidence prior to Appellant having the opportunity to utilize his evidence at the hearing.

21. The Judge erred as a matter of law by not acting as a neutral arbiter of disputes, but as a prosecutor/counsel or advocate for Appellee.

22. The Judge erred as a matter of law by showing he is not impartial to the parties.

23. The Judge erred as a matter of law by allowing Appellee to make closing arguments

in addition to Appellee's attorneys.

24. The Judge erred as a matter of law by allowing Appellee's attorneys testify.

25. The Judge erred as a matter of law by hearing issues outside of the four corners of the petitions in front of the Court, which were not properly in front of the Court including Appellant's personal injury settlement.

26. Appellant avers as he is unable to afford the transcripts related to this appeal, and is currently appealing the Trial Court's denial to waive the transcript fees, Appellant respectfully reserves the right to file an amended concise statement once Appellant receives the transcripts.

27. Appellant reserves the right to file an amended concise statement.

Respectfully submitted,

Date: January 1, 2025

Chad Batterman, *prose*
1400 Sackettsford Road
Ivyland, PA 18974
Telephone: (610) 587-0036
Email: chadbatterman@gmail.com

## VERIFICATION

I, Chad Batterman, verify that the statements made in this pleading are true and correct to the best of my knowledge, understanding and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. Section 4904, relating to unsworn falsification to authorities.

Dated: __1-1-25_____

_____
Chad Batterman

**IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PA**
**SUPPORT DIVISION**

**BY: CHAD BATTERMAN, PRO SE**     Defendant/Petitioner
1400 Sackettsford Road
Ivyland, PA 18974
(610) 587-0036

|  |  |
|---|---|
| SILVIA SANTO    , | COURT OF COMMON PLEAS |
| | BUCKS COUNTY, PA |
| Plaintiff, | SUPPORT DIVISION |
| | |
| v. | |
| | Docket No.  2024DR00154 |
| CHAD BATTERMAN, | PACSES No. 267116855 |
| | |
| Defendant. | IN SUPPORT |

## CERTIFICATE OF SERVICE

I, Chad Batterman, hereby certify that a true and correct copy of Petitioner/Defendant,
**STATEMENT OF ERRORS COMPLAINED OF ON APPEAL**, was served upon Plaintiff/
Respondent, Silvia Santo on January 1, 2025 as follows:

Silvia Santo                               [X]   U.S. Mail, Postage Prepaid
323 Mankin Ave                             [ ]   Overnight Mail
Huntingdon Valley, PA 19006                [ ]   Facsimile No.
                                           [ ]   Other: Email/PDF
                                           [ ]   Certified Mail, Postage Prepaid

Honorable James McMaster

Bucks County Court of Common Pleas
100 N. Main Street
Doylestown, PA 18901

By: _____
          Chad Batterman, *pro se*

# EXHIBIT A

# IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
## DOMESTIC RELATIONS SECTION

SILVIA SANTO

vs.

CHAD BATTERMAN

Docket No. __2024DR00154__

PACSES No. __267116855__

UIFSA No. SCANNED

## ORDER OF COURT

AND NOW, November 18, 2024 , after hearing, the Court enters the following orders:

☐ 1. That the above named defendant pay to PA SCDU _____ per month _____ for support of _____, effective _____ (allocated _____).

ALL ARREARS TO BE PAID AT _____ per month

☐ 2. This is a final Order of Court.

☐ 3. The interim Order is rescinded

☐ 4. This order shall be paid by Income Attachment. Defendant to remit payments to PA SCDU until attachment takes effect.

☐ 5. Defendant's employer (ID# _____ ) is _____

☐ 6. Should there be an overpayment on the account it is to reduce by 20 % per Pa RCP. 1910.19(g)(1).

☐ 7. Health care coverage provided by _____.

☐ 8. Unreimbursed medical expenses that exceed $250.00 annually per child and/or spouse are to be paid as follows: _____% by defendant _____% by plaintiff. The plaintiff is responsible to pay the first $250.00 annually (per child and/or spouse) in unreimbursed medical expenses.

☐ 9. Hearing is rescheduled to _____.

☐ 10. A $ _____ judicial computer system fee has been added to the account pursuant to 42 PA C.S.§ 3733.1.

☑ 11. OTHER:

The Petition for Modification filed by Defendant on 8/2/2024 is hereby Denied and Dismissed.

The In Forma Pauperis Petition filed on 11/12/2024 is Denied and Dismissed after full hearing and based upon testimony that Defendant has financial resources and funds available to purchase the transcripts.

Bucks County DRS to issue an Order for the Release of Information from the Law Firm of Leonard Sciolla, Zurich American Insurance Company and any and all other entities, for any and all information regarding any and all law suits and any and all settlement proceeds on behalf of or made available on behalf of Defendant.

Furthermore, the Petition For Contempt is rescheduled to 12/6/2024 at 8:30am at Bucks County Domestic Relations.

All payments to be turned over by the PA SCDU for distribution and disbursement in accordance with Rule 1910.17(d). No credit will be given for payments made outside the court, directly to plaintiff except where specifically ordered by the Court. All other provisions of the previous support order to remain in effect except where herein modified. The Court further directs the parties comply with the additional provisions attached to this order as may be applicable.

Court Reporter _Jennifer Walker_

Dispo Officer _MAL_

BY THE COURT:

_____ Judge

☐ Exhibits filed

Defendant **Present** ☑ Defendant's Attorney _____

Plaintiff **Present** ☑ Plaintiff's Attorney _____

BO 001 v7/2

# ADDITIONAL ORDER PROVISIONS

## General

All terms of this order are subject to collection and/or enforcement by contempt proceedings, credit bureau reporting, tax refund offset certification, and the freeze of financial assets. These enforcement/collection mechanisms will not be initiated as long as obligor does not owe overdue support. Failure to make each payment on time and in full will cause all arrears to be come subject to immediate collection by all the means listed above.

Parties must within seven days inform the Domestic Relations Section and the other parties, in writing, of any material change in circumstances relevant to the level of support or the administration of the support order, including, but not limited to, loss or change of income or employment and change of personal address or change of address of any child receiving support. **A party who willfully fails to report a material change in circumstances may be adjudged in contempt of court, and may be fined or imprisoned.**

Pennsylvania law provides that all support orders be reviewed at least once every three (3) years if such review is requested by one of the parties. If you wish to request a review and adjustment of your order, you must do the following: Call your attorney. An unrepresented person who wants to modify (adjust) a support order should contact the Domestic Relations Section.

A mandatory income attachment will issue unless the defendant is not in arrears in payment in an amount equal to or greater then one month's support obligation and (1) the court finds that there is good cause not to require immediate income withholding; or (2) a written agreement is reached between the parties which provides for an alternate arrangement.

Arrearage balances may be reported to credit agencies. On and after the date it is due, each unpaid support payment shall constitute, by operation of law, a judgment against you, as well as a lien against real property.

The monthly support obligation includes cash medical support in the amount of $250 annually for unreimbursed medical expenses incurred for each child and/or spouse as ordered herein. Unreimbursed medical expenses of the obligee or children that exceed $250 annually shall be allocated between the parties. The party seeking allocation of unreimbursed medical expenses must provide documentation of expenses to the other party no later than March 31st of the year following the calendar year in which the final medical bill to be allocated was received.

All charging orders for spousal support and alimony pendente lite, including unallocated orders for child and spousal support or child support and alimony pendente lite, shall terminate upon death of the payee.

## Payment Instructions

All checks and money orders must be made payable to Pa SCDU and mailed to:

> Pa SCDU
> P.O. Box 69110
> Harrisburg, Pa 17106-9110

Payments must include the defendant's PACSES member number or Social Security Number in order to be processed. Do not send cash by mail.

## Health Care Insurance

If health care insurance for a child (or spouse) has been ordered, the obligated parent/spouse shall submit to the person having custody of the child(ren) written proof that medical insurance has been obtained or that application for coverage has been made. Proof of coverage shall consist, at a minimum, of 1) the name of the health care coverage provider(s); 2) any applicable identification numbers; 3) any cards evidencing coverage; 4) the address to which claims should be made; 5) a description of any restrictions on usage, such as prior approval for hospital admissions, and the manner of obtaining approval; 6) a copy of the benefit booklet or coverage contract; 7) a description of all deductibles and co-payments; and 8) five copies of any claim forms.

It is further ordered that, upon payor's failure to comply with this order, payor, may be arrested and brought before the Court for a Contempt hearing; payor's wages, salary, commissions, and/or income may be attached in accordance with law; this Order will be increased without further hearing by 10% a month until all arrearages are paid in full. Payor is responsible for court costs and fees.

# EXHIBIT B

BY: CHAD BATTERMAN, PRO SE          Defendant/Petitioner

1400 Sackettsford Road

Ivyland, PA 18974

(610) 587-0036

2025 JAN -7 P 4: 11

RECEIVED
DOMESTIC RELATIONS
SECTION

---

|   |   |   |
|---|---|---|
| SILVIA SANTO | : | COURT OF COMMON PLEAS |
|   | : | BUCKS COUNTY, PA |
|   | : | SUPPORT DIVISION |
| vs. | : |   |
|   | : | PACSES NO. 267116855 |
| CHAD BATTERMAN | : | DOCKET NO. 2024DR00154 |

---

## STATEMENT OF ERRORS COMPLAINED OF ON APPEAL

The lower court erred in its Order of December 6, 2024, Exhibit A, for the following reasons:

1. The Judge erred as a matter of law by finding Appellant in contempt of the September 26, 2023 Support Order.

2. The Judge erred as a matter of law by finding Appellant in contempt especially when the contempt hearing only related to child support and contempt of the September 26, 2023 Order. The Judge erred as a matter of law by holding the contempt hearing

3. The Judge erred as a matter of law by fining Appellant more than the allowable

 **ENTERED**

5U001

amount pursuant to the law.

4. The Judge erred as a matter of law by setting a purge condition and fine which Appellant did not have the ability to pay.

5. The Judge erred as a matter of law by Ordering an obscene and prejudicial purge condition for Appellant to get out of prison early.

6. The Judge erred as a matter of law by willfully violating the September 25, 2023 Non-Disbursement Order.

7. The Judge erred as a matter of law by failing to lift the September 25, 2023 Non-Disbursement Order prior to finding Appellant in contempt.

8. The Judge erred as a matter of law by failing to lift the September 25, 2023 Non-Disbursement Order immediately after finding Appellant in contempt.

9. The Judge erred as a matter of law by stating Appellant had access to use the $25,000 from a personal injury settlement to pay for child support.

10. The Judge erred as a matter of law by Ordering the purge of $25,000 based upon the Trial Courts belief that it had the legal authority to seize more than 98% of Appellant's settlement.

11. The Judge erred as a matter of law by setting a purge condition of 98% of Appellant's total settlement totaling $25,000 without there first being a lien on Appellant's settlement at the time of the finding of contempt.

12. The Judge erred as a matter of law by Ordering the purge of $25,000 when the total disputed amount of child support arrears due by Appellant was $12,514.88 as of the December 6, 2024 contempt hearing.

13. The Judge erred as a matter of law by issuing an extremely high purge of $25,000 and taking into consideration APL when the contempt hearing only related to child support.

14. The Judge erred as a matter of law by imposing a punitive sentence instead of a coercive sentence by imposing conditions Appellant was unable to perform himself.

15. The Judge erred as a matter of law by failing to recognize the only reason why contempt was filed against Appellant was due to the Trial Court's failure to timely hold a modification of custody hearing for years in Philadelphia County (Family Court).

16. The Judge erred as a matter of law by failing to take into consideration the reason why arrears were so high was due to Appellant not being able to work and the inexcusable extreme delay by the Trial Court to hold a hearing on Appellant's Petition to Modify Support in the Philadelphia Court of Common Pleas (Family Court).

17. The Judge erred as a matter of law by applying the $25,000 purge from Appellant's settlement towards the contempt purge to Appellant's child support arrears and APL arrears instead of applying the $25,000 only to the child support.

18. The Judge erred as a matter of law by using Appellant's settlement towards APL.

19. The Judge erred as a matter of law by denying Appellant's continuance request of the December 6, 2024 hearing.

20. The Judge erred as a matter of law by failing to suspend the Support Order.

21. The Judge erred as a matter of law by failing to modify (decrease) the Support Order.

22. The Judge erred as a matter of law by failing to retroactively suspend the Support Order.

23. The Judge erred as a matter of law by failing to retroactively modify the Support Order.

24. The Judge erred as a matter of law by failing to recognize the current Support Order and one immediately prior were confiscatory and even if Appellant had the ability to earn an income and/or had an income, Appellant would not be able to afford the said Support Orders and his own reasonable monthly expenses.

25. The Judge erred as a matter of law by failing to recognize the Support Order had not been automatically reviewed once every three years.

26. The Judge erred as a matter of law by ignoring Appellant's Physician Verification Forms submitted and moved into the Court record.

27. The Judge erred as a matter of law by not allowing Appellant to use exhibits and

testimony, which are already part of the certified Court record.

28. The Judge erred as a matter of law by refusing to allow Appellant to present evidence, exhibits, and testimony to the Court regarding Support prior to the Support Case being transferred from Philadelphia County Court of Common Pleas (Family Court) to Bucks County Court of Common Pleas, and admit the evidence into the record.

29. The Judge erred as a matter of law by failing to allow Appellant to admit relevant evidence into the record, including but no limited to case law.

30. The Judge erred as a matter of law by failing to allow Appellant to make proper objections during the hearings.

31. The Judge erred as a matter of law by failing to allow Appellant to ask Appellee several relevant questions during Appellee's testimony.

32. The Judge erred as a matter of law by violating Appellant's monthly minimum Self-Support Reserve (SSR).

33. The Judge erred as a matter of law by allowing Appellee and Appellee's Court appointed attorneys to seek discovery by issuance of a subpoena in a Support Case on third parties including but not limited to Appellant's attorney represented Appellant in a personal injury case.

34. The Judge erred as a matter of law by allowing Appellee and Appellee's Court appointed attorneys to use the discovery they received from their issued subpoena in

the Support Case.

35. The Judge erred as a matter of law by allowing Appellee and Appellee's Court appointed attorneys to use the discovery they received from their issued subpoena in the Support Case, despite Appellee's attorneys failing to serve Appellant a copy of the subpoena.

36. The Judge erred as a matter of law by holding a hearing on Appellant's "PETITION TO SUSPEND AND/OR MODIFY(DECREASE) CHILD SUPPORT AND ALIMONY PENDENTE LITE ORDER," when his Honor did not have jurisdiction to hold a hearing to modify support, since Appellant had pending appeals with the Superior Court of Pennsylvania regarding support.

37. The Judge erred a matter of law by holding a hearing on Appellant's "PETITION TO SUSPEND AND/OR MODIFY(DECREASE) CHILD SUPPORT AND ALIMONY PENDENTE LITE ORDER," instead of issuing a stay on Appellant's petition to modify support and stay on the contempt petition against Appellant, until the Superior Court had ruled upon Appellant's pending appeals with the Superior Court of Pennsylvania regarding support.

38. The Judge erred as a matter of law by not acting as a neutral arbiter of disputes, but as a prosecutor/counsel or advocate for Appellee.

39. The Judge erred as a matter of law by showing he is not impartial to the parties.

40. The Judge erred as a matter of law by forcing Appellant to provide Appellee and

Appellee's attorneys his evidence prior to Appellant having the opportunity to utilize his evidence at the hearing.

41. The Judge erred as a matter of law by forcing Appellant to show Appellee and Appellee's attorneys his laptop to review Appellant's evidence and all documents on computer for inspection prior to the Court allowing Appellant to testify or to use his laptop.

42. The Judge erred as a matter of law by stopping the hearing right after Appellee began testifying on the final day to demand Appellant not use his computer at the hearing on December 6, 2024, despite no objection by Appellee or her attorneys and despite the fact Appellant had been using his laptop during all hearings with Judge McMaster for the previous four hearings without any issues.

43. The Judge erred as a matter of law by not acting as a neutral arbiter of disputes, but as a prosecutor/counsel or advocate for Appellee.

44. The Judge erred as a matter of law by showing he is not impartial to the parties.

45. The Judge erred as a matter of law by allowing Appellee to make closing arguments in addition to Appellee's attorneys.

46. The Judge erred as a matter of law by allowing Appellee's attorneys to testify.

47. The Judge erred as a matter of law by hearing issues outside of the four corners of the petitions in front of the Court, which were not properly in front of the Court including Appellant's personal injury settlement.

48. Appellant avers as he is unable to afford the transcripts related to this appeal, and is currently appealing the Trial Court's denial to waive the transcript fees, Appellant respectfully reserves the right to file an amended concise statement once Appellant receives the transcripts.

49. Appellant reserves the right to file an amended concise statement.

Respectfully submitted,

Date: January 7, 2025

Chad Batterman, *pro se*

1400 Sackettsford Road

Ivyland, PA 18974

Telephone: (610) 587-0036

Email: chadbatterman@gmail.com

## <u>VERIFICATION</u>

I, Chad Batterman, verify that the statements made in this pleading are true and correct to the best of my knowledge, understanding and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. Section 4904, relating to unsworn falsification to authorities.


Dated: __1-7-25_____

_____
Chad Batterman

**IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PA**
**SUPPORT DIVISION**

**BY: CHAD BATTERMAN, PRO SE**     Defendant/Petitioner
1400 Sackettsford Road
Ivyland, PA 18974
(610) 587-0036

2025 JAN -7 P 4:11

RECEIVED DOMESTIC RELATIONS SECTION

|  |  |
|---|---|
| SILVIA SANTO , | : COURT OF COMMON PLEAS |
|  | : BUCKS COUNTY, PA |
| Plaintiff, | : SUPPORT DIVISION |
|  | : |
| v. | : |
|  | : Docket No. 2024DR00154 |
| CHAD BATTERMAN, | : PACSES No. 267116855 |
|  | : |
| Defendant. | : IN SUPPORT |

**CERTIFICATE OF SERVICE**

I, Chad Batterman, hereby certify that a true and correct copy of Petitioner/Defendant,
**STATEMENT OF ERRORS COMPLAINED OF ON APPEAL**, was served upon Plaintiff/
Respondent, Silvia Santo on January 7, 2025 as follows:

Silvia Santo                          [X]   U.S. Mail, Postage Prepaid
323 Mankin Ave                   [ ]   Overnight Mail
Huntingdon Valley, PA 19006   [ ]   Facsimile No.
                                          [ ]   Other: Email/PDF
                                          [ ]   Certified Mail, Postage Prepaid

Honorable James McMaster

Bucks County Court of Common Pleas
100 N. Main Street
Doylestown, PA 18901

By:_____
Chad Batterman, *pro se*

RECEIVED
DOMESTIC RELATIONS
SECTION

2025 JAN -7 P 4: 11

# EXHIBIT A

# IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
## DOMESTIC RELATIONS SECTION

**SILVIA SANTO**

**ORIGINAL**

Docket No. **2024DR00154**

vs.

PACSES No. **267116855**

UIFSA No.

**CHAD BATTERMAN**

## ORDER OF COURT FOR CIVIL CONTEMPT

**AND NOW, December 6, 2024** , after hearing, the Court enters the following orders:

☐ 1. Mandatory income attachment is in effect with defendant's employer in the sum of $_____ per _____ (allocated $_____ order plus $_____ on arrears). Defendant to pay this amount directly to PA SCDU until income attachment takes effect.

☐ 2. Defendant's employer (ID# _____ ) is _____

☐ 3. Defendant is to pay $_____ toward arrears on or before _____

Payment is to be applied to the defendant's accounts pursuant to the PACSES hierarchy of payments.

☐ 4. Petition for contempt _____.

☐ 5. Bench Warrant issued for defendant due to his/her failure to appear. Plaintiff is to be notified when defendant appears to address Bench Warrant.

☐ 6. Bench Warrant rescinded.

☑ 7. Based on the evidence presented at the hearing, the Court finds the defendant willfully failed to pay the court-ordered amount while having the financial ability to pay and is in contempt of the order; Defendant is remanded to B.C. Correctional Facility for a period of **6 months** effective **12/6/2024** . Defendant to be purged of contempt upon payment of $**25,000.00** to the Bucks County Domestic Relations Section in cash. Defendant is to be immediately screened for work release.

☐ 8. Defendant resides outside of Bucks County's jurisdiction. Matter to be reviewed, and if appropriate, sent to the other court for enforcement purposes.

☐ 9. OTHER:

All payments to be turned over by the PA SCDU for distribution and disbursement in accordance with Rule 1910.17(d). No credit will be given for payments made outside the court, directly to plaintiff except where specifically ordered by the court. All other provisions of the previous support order to remain in effect except where herein modified. The Court further directs that parties comply with the additional provisions attached to this order as may be applicable.

Court Reporter **Jennifer Walker**

Dispo Officer **RGA**

IV-D Attorney **Jessica Fidler**

☐ Exhibits filed

Defendant **Present**

Plaintiff **Not Present**

**BY THE COURT:**

_____ Judge

Defendant's Attorney **Pro Se** _____

Plaintiff's Attorney _____

BO 002 v7/21

# ADDITIONAL ORDER PROVISIONS

## General

All terms of this order are subject to collection and/or enforcement by contempt proceedings, credit bureau reporting, tax refund offset certification, and the freeze of financial assets. These enforcement/collection mechanisms will not be initiated as long as obligor does not owe overdue support. Failure to make each payment on time and in full will cause all arrears to become subject to immediate collection by all the means listed above.

Parties must within seven days inform the Domestic Relations Section and the other parties, in writing, of any material change in circumstances relevant to the level of support or the administration of the support order, including, but not limited to, loss or change of income or employment and change of personal address or change of address of any child receiving support. A party who willfully fails to report a material change in circumstances may be adjudged in contempt of court, and may be fined or imprisoned.

Pennsylvania law provides that all support orders be reviewed at least once every three (3) years if such review is requested by one of the parties. If you wish to request a review and adjustment of your order, you must do the following: Call your attorney. An unrepresented person who wants to modify (adjust) a support order should contact the Domestic Relations Section.

A mandatory income attachment will issue unless the defendant is not in arrears in payment in an amount equal to or greater than one month's support obligation and (1) the court finds that there is good cause not to require immediate income withholding; or (2) a written agreement is reached between the parties which provides for an alternate arrangement.

Arrearage balances may be reported to credit agencies. On and after the date it is due, each unpaid support payment shall constitute, by operation of law, a judgment against you, as well as a lien against real property.

The monthly support obligation includes cash medical support in the amount of $250 annually for unreimbursed medical expenses incurred for each child and/or spouse as ordered herein. Unreimbursed medical expenses of the obligee or children that exceed $250 annually shall be allocated between the parties. The party seeking allocation of unreimbursed medical expenses must provide documentation of expenses to the other party no later than March 31st of the year following the calendar year in which the final medical bill to be allocated was received.

All charging orders for spousal support and alimony pendent lite, including unallocated orders for child and spousal support or child support and alimony pendent lite, shall terminate upon death of the payee.

## Payment Instructions

All checks and money orders must be made payable to Pa SCDU and mailed to:

> Pa SCDU
> P.O. Box 69110
> Harrisburg, Pa 17106-9110

Payments must include the defendant's PACSES member number or Social Security Number in order to be processed. Do not send cash by mail.

## Health Care Insurance

If health care insurance for a child (or spouse) has been ordered, the obligated parent/spouse shall submit to the person having custody of the child(ren) written proof that medical insurance has been obtained or that application for coverage has been made. Proof of coverage shall consist, at a minimum, of 1) the name of the health care coverage provider(s); 2) any applicable identification numbers; 3) any cards evidencing coverage; 4) the address to which claims should be made; 5) a description of any restrictions on usage, such as prior approval for hospital admissions, and the manner of obtaining approval; 6) a copy of the benefit booklet or coverage contract; 7) a description of all deductibles and co-payments; and 8) five copies of any claim forms.

It is further ordered that, upon obligor's failure to comply with this order, obligor, may be arrested and brought before the Court for a Contempt hearing; obligor's wages, salary, commissions, and/or income may be attached in accordance with law; this Order will be increased without further hearing by 10% a month until all arrearages are paid in full. Obligor is responsible for court costs and fees.

# EXHIBIT C

J-A21039-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CHAD BATTERMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SILVIA SANTO | : | No. 469 EDA 2024 |

Appeal from the Order Entered January 11, 2024
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s):  PACSES: 267116855

BEFORE:  KUNSELMAN, J., NICHOLS, J., and BECK, J.

MEMORANDUM PER CURIAM:                **FILED JANUARY 17, 2025**

Chad Batterman ("Batterman") appeals pro se from the order entered by the Philadelphia County Court of Common Pleas ("trial court") finding him to be in contempt of a child support order.  Upon careful review, we affirm.

Batterman and Silvia Santo ("Santo") were married on November 29, 2014, and separated three years later.  The parties have two children, born in October 2015 and October 2017.  In December 2017, Santo filed a complaint for child support.  On June 22, 2018, the trial court entered a final child support order calculating Batterman's monthly child support obligation for the two children to be $686.00 per month.  On October 1, 2018, Batterman filed a petition to modify the support order.  Following protracted proceedings during which Batterman filed another petition to modify the order and,

separately, was found in contempt of the support order,[1] the trial court entered an order on February 20, 2020, directing Batterman to pay $674.48 per month for the support of his two children. This Court affirmed that order. *See Santo-Batterman v. Batterman*, 1258 EDA 2020 (Pa. Super. Aug. 23, 2021) (non-precedential decision).

Subsequently, the trial court found Batterman in contempt of the support order in September 2023. The trial court sentenced Batterman to thirty days in prison with a purge factor of $5,000. Batterman paid the purge factor that same day and was released from prison. On November 30, 2023, Santo filed a petition for contempt of the support order based upon Batterman's failure to make regular child support payments as ordered.

The trial court held a hearing on Santo's contempt petition January 11, 2024.[2] At the hearing, Batterman testified that he was unable to make payments because he had medical problems that inhibited his ability to work.

---

[1] The trial court has set forth an extensive recitation of the facts in its opinion. *See* Trial Court Opinion, 4/15/2024, at 2-12. Notably, in September 2018, the trial court found Batterman in civil contempt of the support order and sentenced him to thirty days in prison with a purge factor of $7,500. Batterman paid this purge factor that same day and was released from prison. Batterman appealed this order, but this Court dismissed the appeal for failure to file a brief. *See Batterman v. Santo*, 2940 EDA 2019 (Pa. Super. 2020) (per curiam order).

[2] At the hearing, the trial court also considered Batterman's petitions for contempt of support order by Santo. The trial court found Santo was not in contempt, and Batterman filed an appeal of this determination at 470 EDA 2024, which we address by separate memorandum decision.

- 2 -

Ultimately, the trial court found Batterman in contempt of the support order, sentenced him to thirty days in prison and imposed a purge factor of $5,000. Batterman immediately paid the purge factor and was released from prison. Batterman filed a timely appeal and raises numerous claims for our review.

## Finding Batterman in Contempt

First, Batterman argues that the trial court erred in finding him in contempt. Batterman's Brief at 2, 40-41, 42. He contends that he has no assets and was assigned an earning capacity of $26,000 per year, but must pay child and spousal support, the children's health insurance, and fund his own needs. *Id.* at 3, 6, 22, 24, 34-35; *see also id.* at 34 (noting that he has outstanding hospital and doctor bills resulting from his inability to work). Batterman asserts that he could not comply with the support order because he was unable to work and earn income and has no assets. *Id.* at 7, 12, 15, 20, 23-24; *see also id.* at 6-7, 19 (contending the trial court erred in calculating his arrears, arguing it should have considered his inability to work and earn an income for a period of at least fifty-nine months). He claims the trial court judge ignored the undisputed evidence that a doctor ordered he could not work following his hospitalization in June 2023, and that there was a backlog for him to gain access to testing centers and specialty doctors for a proper diagnosis. *Id.* at 3-6, 16-18, 19, 20, 21-22, 28-29. Batterman points out that he is on supplemental nutrition assistance program benefits and that multiple courts have granted him in forma pauperis status based on his own

inability to pay fees, which he contends establishes his indigency and poverty. *Id.* at 9, 25-26, 33-34, 36-37. In Batterman's view, the trial court should have modified and/or suspended the support order. *Id.* at 13-14, 23; *see also id.* at 18-19, 38-39 (noting that Santo refuses to work a fulltime job to support the children and fails to contribute to the children's extracurricular activities).

Batterman acknowledges that his parents pay his purge factors to keep him out of prison, but asserts that this has presented a hardship for them, requiring them to cash in retirement funds, obtain loans, or sell things to pay the court. *Id.* at 7-8, 9, 32-33. He further contends that his parents' money is not relevant in determining his ability to pay, and the trial court's reliance on his parents' wealth prejudices him. *See id.* at 8, 15-16, 23, 24, 26-27, 31, 32, 39-40, 41; *see also id.* at 24-25, 26 (asserting there is no support in the record for the trial court's finding that his parents provide him a lavish lifestyle). Batterman states that his parents will not pay his child support and that his parents' prior payment of court fees is irrelevant to the instant case. *Id.* at 31-32, 34-35, 41; *see also id.* at 41-42 (arguing that his parents are free to spend their money how they wish). According to Batterman, and contrary to what he believes to be the trial court's finding, the definition of income under the Domestic Relations Code does not include paternal grandparents paying for reasonable living costs or owning the home in which Batterman lives. *Id.* at 10-11.

We will reverse an order granting a civil contempt petition only if the trial court misapplied the law or exercised its discretion in a manner that lacked reason. **MacDougall v. MacDougall**, 49 A.3d 890, 892 (Pa. Super. 2012). "Each court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from failing into disrepute." **Habjan v. Habjan**, 73 A.3d 630, 637 (Pa. Super. 2013) (citation omitted); **see also** Pa.R.Civ.P. 1910.25. The general rule in proceedings for civil contempt is that "the burden of proof rests with the complaining party to demonstrate, by a preponderance of the evidence, that the defendant is in noncompliance with a court order." **Habjan**, 73 A.3d at 637 (citation omitted).

> To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

**Id.** (citation omitted). "The purpose of civil contempt is to compel performance of lawful orders, and in some instances, to compensate the complainant for the loss sustained. When contempt is civil, a court must impose conditions on the sentence so as to permit the contemnor to purge himself." **Gunther v. Bolus,** 853 A.2d 1014, 1018 (Pa. Super. 2004) (citations and quotation marks omitted).

- 5 -

Here, the record establishes that the trial court entered a child support order in February 2020, Batterman had notice of the order, and Batterman has failed to make the required monthly payments. N.T., 1/11/2024, at 32; **see also** Trial Court Opinion, 4/15/2024, at 20 ("[Batterman] has clearly failed to comply with the child support order, as evidenced by the high amount of arrears amassed and his complete lack of regular payments on his support obligation."). To that end, Batterman has accumulated arrearages totaling $10,089.78, N.T., 1/11/2024, at 31, 58, 62, and the trial court has previously found him in contempt of this child support order for nonpayment. **See id.** at 31-32. As the trial court stated on the record at the hearing:

> [T]here have been no payment[s] other than purges and ordered payments from the [trial c]ourt in lump sum. The last one as you said hit 10/10/23. I believe it was from another county. $19,685. Prior to that, [] Batterman was found in ... civil contempt on October, 2023 where a $5,000 purge was set. That purge was paid pretty much immediately, same day. Prior to that March 15, 2021[,] there was a $4,000 payment. I am not sure, that was not a purge but it was a lump sum payment. Prior to that, September 19th of 2019, there was a $7,500 payment. That was the same day purge again ....

**Id.**

There appears to be no question that Batterman has failed to comply with the support order, which generally is sufficient to establish his willful violation. **See Godfrey v. Godfrey**, 894 A.2d 776, 783 (Pa. Super. 2006) (concluding that the evidence of record supported the trial court's finding that the father willfully violated the child support order where father never complied with the support order and had accumulated substantial arrearages).

- 6 -

Batterman argues, however, that his noncompliance is not willful, but that he is unable to meet his child support obligations and therefore cannot be found in contempt. To that end, Batterman seeks to relitigate the calculation of his earning capacity based upon his inability to work for a period of over four years. In so arguing, he relies on various doctors' reports detailing this inability. We note, however, that Batterman presented this evidence to the trial court, which found it to be unpersuasive and incredible:

> [Batterman] presented doctor's notes that he purported to support his claims that he cannot work because he is injured. His evidence did not support his claim. Some of his doctor's notes were vague and open-ended, such as one from February 2023 that stated [Batterman] could return to work "once MRI is completed" with no confirmation of whether an MRI was ever done. Other notes referred to minor injuries[,] but did not conclude that the claimed injuries prevented [Batterman] from doing any type of work at all. For example, two injuries [Batterman] claimed prevented him from doing any type of work were having two fractured toes and a sprained wrist ([Batterman's] Exhibit A, doctors notes dated September 11, 2019 and October 22, 2019). This alleged documentation of [Batterman's] inability to work was not persuasive at all.

Trial Court Opinion, 4/15/2024, at 18-19. We must defer to the trial court's credibility determinations and conclude that Batterman's claim that he was unable to work is not supported by the record. *See Habjan*, 73 A.3d at 644.

Additionally, Batterman takes issue with the trial court's reliance on his parents' financial support in the form of living expenses, payment for vacations, and payment of prior purge factors each time after he was found in contempt. Batterman argues the trial court erred in finding his parents' financial aid was properly calculated as part of his income.

- 7 -

"The starting point for calculation of a parent's child support obligation is a determination of each party's income available for support." ***Mencer v. Ruch***, 928 A.2d 294, 297 (Pa. Super. 2007). "The assessment of the full measure of a parent's income for the purposes of child support requires courts to determine ability to pay from all financial resources" and "the court must consider all forms of income." ***Id.*** (citation and quotation marks omitted).

For purposes of child support, "income" is defined as follows:

> **"Income."** Includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source.

23 Pa.C.S. § 4302. Notably, "[w]hile this definition is expansive, it includes neither gifts nor loans." ***Suzanne D. v. Stephen W.***, 65 A.3d 965, 970 (Pa. Super. 2013); ***see also id.*** ("Because a gift is given not in exchange for services, it does not meet the statutory definition of income.").

We conclude that Batterman is correct that the funds he receives from his parents cannot be counted as "income." The record reflects that Batterman's parents' financial assistance includes the cost of his monthly rent

- 8 -

($3,000), his utilities and other living expenses, and paying for his and the children's health insurance. *See* Trial Court Opinion, 4/15/2024, at 22. Such payments are properly classified as a gift or a loan. *See Suzanne D.*, 65 A.3d at 971, 973 (finding that paternal grandfather's payment of private school tuition, children's medical expenses, and extracurricular activities were gifts). As gifts, the money provided to Batterman cannot be considered "income" for child support purposes. *See id.* at 972 ("Monetary gifts from family members are a common practice, and would not have been unknown to the drafters of the statute. Had the General Assembly wished to include gifts as income for support, it would have done so."). Therefore, the trial court erred in finding these gifts by Batterman's parents constitute "income" under 23 Pa.C.S. § 4302.

Nevertheless, gifts may be included in determining whether a party can pay child support. *See Mencer*, 928 A.2d at 297 (noting in determining the amount of child support, courts may consider all the parent's financial resources); *see also Suzanne D.*, 65 A.3d at 973 (noting that gifts, which are likely to continue, can be considered in supporting an upward deviation for child support). Batterman does not dispute the trial court's finding that he receives support and resources from his parents, "yet he refuses to pay any of it to support his children unless he is faced with a jail sentence and purge factor." Trial Court Opinion, 4/15/2024, at 20.

"[A] parent's duty to support his minor children is absolute, and the purpose of child support is to promote the children's best interests. The court has no legal authority to eliminate an obligor's support obligation, where the obligor can reasonably provide for some of the children's needs." *Silver v. Pinskey*, 981 A.2d 284, 296 (Pa. Super. 2009) (citation omitted). "The support of a spouse or child is a priority obligation so that a party is expected to meet this obligation by adjusting the party's other expenditures." Pa.R.Civ.P. 1910.16-1(a)(4).

Simply stated, the record supports the trial court's finding that Batterman had the ability to pay child support in accordance with its order but willfully failed to do so. We therefore conclude that the trial court did not abuse its discretion in finding Batterman to be in contempt of the child support order.[3]

### Prison Sentence in Contravention of Doctors' Orders

In his second claim, Batterman argues that the trial court erred in ordering him to prison, despite orders from two doctors indicating that he should not be sent to prison. Batterman's Brief at 42-44. Batterman points to exhibits entered at the hearing wherein doctors stated that his illness would prevent him from attending hearings or being in "situations where it would be impossible for him to leave if the symptoms should recur." *Id.* at 43.

---

[3] *See Bank of Am., N.A. v. Scott*, 271 A.3d 897, 908 (Pa. Super. 2022) (stating that this Court may affirm on any legal basis supported by the record).

According to Batterman, the trial court's failure to heed the doctors' warnings was error and placed him in danger. *Id.* at 43, 44.

Our review of the record reveals, and the trial court's opinion confirms, that Batterman failed to raise the claim that he could not be placed in prison based on doctors' orders before the trial court. *See* Trial Court Opinion, 4/15/2024, at 21. Moreover, Batterman does not cite to any place in the record where a doctor stated that his medical problems precluded his incarceration. *See id.* ("[T]here is no factual or evidentiary basis for this claim. [Batterman] neither presented nor referenced any order from a doctor claiming [he] should not be incarcerated, so any order sentencing him to incarceration could not possibly be 'in defiance of doctors orders.'"); *see also* Pa.R.A.P. 2119(c) ("If reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appear."). Therefore, the claim is waived on appeal. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

## Parents' Finances

In his third claim, Batterman argues that the trial court judge erred in concluding his parents are "like his private bank account" and should pay his child support obligations. Batterman's Brief at 44. Batterman asserts that

the judge improperly focused on the size of the house and property where he lives, the value of the house, and the payments made by his parents for utilities, health insurance, and other items. *Id.* at 44-45. Batterman believes the trial court judge is "infatuated and enamored" with his parents and that the judge should have weighed his current financial situation and inability to pay, rather than his parents' financial situation. *Id.* at 45.

The trial court, citing an October 19, 2023 order denying Batterman's petition to proceed in forma pauperis, indicated it assessed the totality of Batterman's income and resources in determining whether he was able to meet his child support obligation:

> According to [Batterman's] testimony, his parents "loan" him his monthly rent of $3,000 and they pay for his electricity, oil, heat, and all his groceries. [Batterman's] parents pay for his health insurance and health insurance for his children. [Batterman] uses a cell phone paid for by his father. ...
>
> [Batterman] has also been able to use family financial resources to pay for a custody evaluation costing $15,000 in 2021 and a forensic mental health evaluation in Montgomery County costing approximately $10,000 in 2023.

Trial Court Opinion, 4/15/2024, at 22 (citation omitted).

We view this claim as another argument in support of finding his inability to pay. As we have already determined, the trial court did not abuse its discretion in utilizing the gifts and loans provided by Batterman's parents to conclude that he can afford the child support obligation ordered. *See supra*, pp. 8-9. Therefore, we do not find merit in Batterman's claim.

### Trial Court as Advocate

In his fourth claim, Batterman argues that the trial court judge did not act as a neutral arbiter and instead acted as an advocate for Santo. Batterman's Brief at 45-47. Batterman contends that the judge excessively questioned him even though Santo had counsel. *Id.* at 46, 47. According to Batterman, the judge did not act impartially at the hearing. *Id.* at 46.

Our review of the record reveals, and the trial court's opinion again confirms, that Batterman did not raise this claim before the trial court.[4] *See* Trial Court Opinion, 4/15/2024, at 22-23.[5] Therefore, the claim is waived on appeal. *See* Pa.R.A.P. 302(a).

## Purge Amount

In his fifth claim, Batterman argues that the "judge erred as a matter of law by setting a purge amount of $5,000." Batterman's Brief at 47. In support of his claim, Batterman only states "[s]ee error number 1, 2, 3, 4, 6, and 7." *Id.*

---

[4] Although Batterman argues he raised this claim in his motion to recuse, this motion was filed prior to the hearing and does not (indeed, it could not) account for the judge's questioning at the hearing.

[5] The trial court also rejects Batterman's claim on the merits pursuant to Pennsylvania Rule of Evidence 614(b). Trial Court Opinion, 4/15/2024, at 18; *see* Pa.R.E. 614(b) ("the court may examine a witness regardless of who calls the witness"). The trial court states that it asked "clarifying questions during testimony, questioning both parties." Trial Court Opinion, 4/15/2024, at 18. It thus concluded that asking "brief, unbiased questions of both parties" was not unreasonable and did not constitute an abuse of discretion. *Id.*

Batterman's incorporation by reference to other portions of his brief is insufficient to allow this Court to review the separate claim raised. **See** Pa.R.A.P. 2119(a) (stating argument must contain analysis and citation to pertinent analysis); **Franciscus v. Sevdik**, 135 A.3d 1092, 1097 (Pa. Super. 2016) (noting courts do not permit parties to incorporate by reference arguments "as a substitute for the proper presentation of arguments in the body of the appellate brief") (citation omitted). Therefore, Batterman waived this claim for appellate review. **See Moranko v. Downs Racing LP**, 118 A.3d 1111, 1117 n.3 (Pa. Super. 2015) (en banc) ("It [is] well settled that a failure to argue and to cite any authority supporting any argument constitutes a waiver of issues on appeal.").[6]

## Recusal

In his sixth claim, Batterman contends that the trial court erred as a matter of law in refusing to hear his emergency motion for recusal and disqualification of the judge.[7] Batterman's Brief at 47-48. Batterman raised the identical claim in his separate appeal from the trial court's denial of his

---

[6] The trial court found that it did not err in imposing the purge amount of $5,000, noting Batterman had the present ability to pay the amount. **See** Trial Court Opinion, 4/15/2024, at 24-26. The trial court cited to Batterman's own testimony that implied his parents would pay the purge factor. **See id.** at 25-26.

[7] Although Batterman alleges he filed two separate recusal motions — on January 9 and 10, 2024, the docket in this case reveals he only filed a recusal motion on January 10, 2024.

contempt petition, which was heard on the same date and at the same hearing as the petition for contempt underlying this appeal. *See **Batterman v. Santo***, 470 EDA 2024, **10-13 (Pa. Super. Jan. 15, 2025). As this issue has already been decided, no relief is due.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/17/2025